UNITED STATES of America,
Plaintiff-Appellee,

v.

Rex Elmo SMALLEY,
Defendant-Appellant.

No. 83–7518.

United States Court of Appeals,
Eleventh Circuit.

March 8, 1985.

Rehearing and Rehearing En Banc
Denied April 24, 1985.

William J. Baxley, Charles A. Dauphin, Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Michael V. Rasmussen, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

Rex Elmo Smalley has been sheriff of Marshall County, Alabama, since 1974. The sale of alcoholic beverages is illegal in Marshall County,[1] but various bootlegging operations have flourished there under the patronage and protection of Sheriff Smalley. During his tenure he has extorted pay-offs from bootleggers[2] in the county and failed to report this income to the Internal Revenue Service.

A jury in the United States District Court for the Northern District of Alabama convicted him of four counts of extortion,[3] one count of conspiracy to commit extortion, and three counts of willfully filing false income tax returns.[4] The court sentenced him to serve concurrent sentences of three years on each count, to pay $1,000.00 on each tax count, and to pay costs of $1,239.22.

Smalley does not challenge on appeal the sufficiency of the evidence to support the convictions. He does, however, allege defects in the indictment and the trial.

## I. THE INDICTMENT

### A. Misjoinder of the Extortion and Tax Counts

■ Smalley first asserts that the joinder of the tax and extortion counts in the same indictment violated Rule 8(a) of the Federal Rules of Criminal Procedure.[5] Improper joinder under Rule 8(a) is a matter of law subject to plenary review by this court. *United States v. Montes-Cardenas,* 746 F.2d 771, 776 (11th Cir.1984). We must construe Rule 8(a) broadly in favor of initial joinder. *Id.* "Offenses may be joined if they are based on 'two or more acts or transactions connected together or constituting part of a common scheme or plan.'" Fed.R.Crim.P. 8(a). Two crimes are 'connected' together if the proof of one crime constitutes a substantial portion of the proof of the other." *Id.* Smalley contends that the government's proof failed to satisfy this requirement because it failed to show that the income he failed to report on his tax returns came from extortion. *Compare United States v. Diaz-Munoz,* 632 F.2d 1330, 1335–36 (5th Cir.1980) (joinder of tax and non-tax counts violated Rule 8(a) because government failed to prove that unreported income flowed from the non-tax crime) *with United States v. Kopituk,* 690 F.2d 1289, 1312–14 (11th Cir.1982) (joinder proper because tax offenses arose out of the other offenses charged), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983).

■ The government's proof at trial consisted of the testimony of bootleggers who had paid large sums to Smalley for protection, Smalley's financial statements,[6] and a bank deposits-cash expenditures analysis.[7]

---

1. Marshall County was dry at all times pertinent to this case.

2. The government also presented evidence that Smalley received payments from certain burglars and marijuana distributors in the county. Bootleggers, however, were Smalley's primary victims.

3. *See* 18 U.S.C. § 1951.

4. *See* 26 U.S.C. § 7206(1).

5. Rule 8(a) reads as follows:
   Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected

together or constituting parts of a common scheme or plan.
The rules also authorize a severance of counts to avoid prejudicial joinder. *See* Fed.R.Crim.P. 14. Smalley has not argued this rule.

6. These statements showed an increase in Smalley's net worth between February 1977 and November 1980 of $140,114 in constant dollars. The extortion counts covered the period from early 1975 to June 1982. The tax counts covered the tax years 1978, 1979 and 1980.

7. This analysis showed understatements on Smalley's tax returns of $44,305.92 for 1978, $30,799.00 for 1979, and $38,655.16 for 1980. The government concedes that under this analysis most of the unreported income stemmed from Smalley's profit from the stipend he received from the State of Alabama and Marshall County to feed the prisoners under his supervi-

Smalley bases his misjoinder argument upon the deposits-expenditures analysis, which he contends establishes that very little of the unreported income stemmed from extortion.[8] We agree with the government, however, that this analysis sets only the lower limit of Smalley's unreported income. The bootleggers testified that they normally made the pay-offs in cash, but few cash deposits were made into Smalley's bank accounts. Thus, the extortion proceeds probably circumvented the receipts-expenditures analysis. The other direct evidence established that Smalley received considerable amounts by extortion. He does not claim to have reported any of it, and the government established that he did not. Thus, because the proof of extortion constituted a substantial portion of the proof of tax evasion, *see Montes-Cardenas*, 746 F.2d at 776, the government proved that logical relationship between the tax and extortion counts required for joinder under Rule 8(a). *See United States v. Park*, 531 F.2d 754, 761 (5th Cir.1976); *see also Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) (decisions of the former Fifth Circuit Court of Appeals handed down prior to October 1, 1981 binding precedent in the eleventh circuit).

### B. Multiplicity of the Extortion Counts

Count three of the indictment charged Smalley with extorting money and alcoholic beverages from Jerry Wayne Lang from late 1974 to July 1980. During this time, Lang either personally operated his bootlegging business or hired employees to operate it for him. Count four charged Smalley with extorting money from Lang and Larry Abercrombie from July 1980 to February 1982. Abercrombie leased the business from Lang at a flat rate of $500.00 per week and gave Lang the pay-off money

for Smalley. Count 20 alleged that Smalley extorted money from Lang, Harry Kearley, and Richard Sams from February 1982 to June 1982. Kearley and Sams, government undercover agents, took over the business from Abercrombie and continued to pay the rent and extortion money to Lang. Each count alleged extortion "by a course of conduct." Smalley insists that these counts allege a single course of conduct against a single victim, Lang, and should therefore have been consolidated.

The government could indeed have proceeded upon a one-count theory. *United States v. Provenzano*, 334 F.2d 678, 684–85 (3d Cir.), *cert. denied*, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). The law does not *require* such a tactic, however. *United States v. Addonizio*, 451 F.2d 49, 59 (3d Cir.1971), *cert. denied*, 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972). An extortion conviction under the Hobbs Act requires proof that (1) the defendant induced his victim to part consensually with property (2) either through the wrongful use of actual or threatened force, violence or fear or under color of official right (3) in such a way as to adversely affect interstate commerce. *United States v. Nakaladski*, 481 F.2d 289, 298 (5th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973); 18 U.S.C. § 1951. Each relinquishment of property manifesting all these elements is a separate offense that may be the subject of a separate count. *Addonizio*, 451 F.2d at 59 (defendant's conviction on sixty-three counts of extortion upheld because all counts, each of which based upon individual payment, showed that each subject payment manifested all the elements of extortion); Fed. R.Crim.P. 8(a). If each individual payment could be the subject of a separate count, then the grouping of payments as in the indictment against Smalley is also permissible.

---

sion. Such portion of that stipend that he did not spend on the prisoners was his under Alabama law.

**8.** Smalley contends that the government's computations failed to include certain items that,

when properly considered, would reduce the amount of the understatements and thus the amount arguably attributable to extortion. He nevertheless fails to account for $181.95 in 1978, $1,320.64 for 1979 and $12,819.73 for 1980.

## II. THE TRIAL

### A. *"Stipulation" by the Trial Judge*

The prisoner stipend received by Smalley, *see supra* note 7, was the subject of considerable testimony at trial. The government called a witness from the State of Alabama Department of Public Accounts, who explained the payment of these funds. The following colloquy occurred on cross-examination of this witness:

Q: Now, what does the law provide—whose money, under the law, legally, is that $1.75 a day, plus the sliding scale of food allowance? Who does that belong to?

A: That is the sheriff's.

Q: Sheriff's, personally?

A: If they have a local law providing such, yes, sir.

Q: All right, sir. Are you familiar with the law in Marshall County, Alabama?

A: Yes, sir.

Q: Well, do you have it with you by chance?

A: Yes, sir, somewhere.

Q: Now, Marshall County, Alabama—

GOVERNMENT ATTORNEY: We will stipulate it is personal income to the sheriff.

DEFENSE ATTORNEY: You will stipulate that all that money belongs to the sheriff?

GOVERNMENT ATTORNEY: Absolutely.

DEFENSE ATTORNEY: All right. Just all the money paid by the state for prisoner meals was personal property of the sheriff.

GOVERNMENT ATTORNEY: And by the county.

DEFENSE ATTORNEY: And paid by the county.

GOVERNMENT ATTORNEY: And by the county.

DEFENSE ATTORNEY: Okay.

Smalley later called as a witness Ralph Dowdy, a Certified Public Accountant, to challenge the income tax calculations of the Internal Revenue Service and to analyze the income reported by Smalley for the tax years in question. Dowdy testified that Smalley's unreported income was less than that claimed by the government, but his figures were based upon the assumption that the profit from the prisoner stipend was not taxable income. During the government's cross-examination of Dowdy, Smalley denied that he had made any stipulation on the issue:

Q: Aren't you assuming in your computation—well, let me ask you this: If he had, if he received checks from the state and from the county and what he got was in excess of his expenses for feeding prisoners, that would be income to him wouldn't it?

A: Not necessarily.

Q: Why not necessarily?

A: Well, if it was income, why didn't the State of Alabama send him a 1099? He gets a W–2 at the end of the year for the salary.

Q: For the record, we stipulated that was income. But let me ask you this—

DEFENSE ATTORNEY: We did not so stipulate. We stipulated that—

THE COURT: Well, I stipulate that it is income because it is the law. That is income. So I am in respectful disagreement with the witness on that. Now, let's go on to the next question.

▮▮▮▮ Smalley argues that the court committed reversible error by (1) stipulating the excess prisoner stipend to be income, thereby invading the purview of the jury, and (2) discrediting the witness before the jury by openly disagreeing with him. "[W]e will not reverse a conviction unless the comments of the Trial Judge are so prejudicial as to amount to a denial of a fair trial." *United States v. Preston*, 608 F.2d 626, 636 (5th Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). "A clear effect on the jury is required to reverse for comment by the trial judge." *United States v. Rochan*, 563 F.2d 1246, 1250 (5th Cir.1977). Such is not the case here.

Gross income includes "all income from whatever source derived, including ... [c]ompensation for services, including fees, commissions, and similar items...." 26 U.S.C. § 61(a)(1). Smalley's excess prisoner stipend falls within this definition. "Under our system of federal income taxation, ... every element of gross income of a person, corporation or individual, is subject to tax unless there is a statute or some rule of law that exempts that person or element." *HCSC-Laundry v. United States*, 450 U.S. 1, 5, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981). Smalley has not directed us to any applicable exemption. The district court's characterization of the excess prisoner stipend was correct. An actual controversy about the taxability of particular receipts may pose a jury issue on the intent of a taxpayer charged with tax evasion. *United States v. Garber*, 607 F.2d 92, 97 (5th Cir.1979). Smalley has shown no such controversy. We need not now decide if the characterization of an economic gain as income is always a question of law for the court. In this case, there simply is no question of fact for the jury on this issue.

This court has identified three factors that indicate that the comments of the trial judge were not reversible error: (1) the comments "occupied but a few seconds of a lengthy trial," (2) the comments "were directed to defense counsel rather than to the jury," and (3) the trial judge advised the jury to disregard any intimation by the court relating to the facts of the case. *Preston*, 608 F.2d at 636 (quoting *United States v. Onori*, 535 F.2d 938, 944 (5th Cir.1976)). This sole challenged statement of the judge occupied a moment of the three-week trial, the court addressed the statement to the attorneys to facilitate the progress of the trial, *cf. United States v. Berdick*, 555 F.2d 1329, 1330 (5th Cir.1977) (court's remarks "not only fair and impartial but necessary to avoid lengthy, redundant and confusing testimony"), and the court diffused any lingering effect of the statement upon the jury with his final instructions.[9]

In *United States v. Washington*, 550 F.2d 320 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977), a bank robbery prosecution, the government proffered a witness as an expert in lifting latent fingerprints. The court accepted the expert over the defendants' objection, observing as follows: "He's totally acceptable to the Court as an expert.... He's had more experience than all of those nutty professors that you have talked about. It's done by the school of hard knocks[; that] is where you learn to dust something and lift fingerprints, and not by some professor

---

9. The district court instructed the jury in relevant part as follows:

[D]uring the course of this trial I have occasionally made comments to the lawyers. You have heard me. And I might have, on occasion, and I think I did occasionally ask questions of the witness or admonish the witness as to the manner in which he had responded or should respond to a question.

Now, don't assume from anything that I have said during the trial that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law here, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

.    .    .    .    .

You are the sole judges of the credibility—put another way—the believability of each witness and the weight to be given his or her testimony. And in weighing the testimony of a witness, you should consider his or her relationship to the government or to the de-

fendant; his or her interest, if any, in the outcome of the case; his or her manner of testifying; his or her opportunity to observe or to acquire knowledge concerning the facts about which he or she testified; his or her candor, fairness, intelligence and the extent to which he or she has been supported or contradicted by other credible evidence. In short, you may accept or reject the testimony of any witness in whole or in part because that is what your job is, to make those kinds of evaluations.

.    .    .    .    .

We have had some expert testimony. You should consider each expert opinion and give it such weight as you think it deserves.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience or if you should conclude that the reasons given in support of the opinion of an expert are not sound or that the opinion is outweighed by other evidence, you may disregard that opinion entirely.

sitting in some university who doesn't know his neck from third base." The defendants' expert on photographic identification was a professor.

The defendants argued on appeal that the comments of the trial judge denied them an effective cross-examination of the government's expert's qualifications, adversely affected the credibility of their expert witness, violated the court's duty to remain neutral and trespassed upon the jury's duties. The appellate court acknowledged that the remarks were unfortunate but refused to reverse the defendants' convictions. They noted that the comments consumed only a few moments of the five-day trial, concerned a procedural matter and did not reflect on the defendants' guilt or innocence. The trial court made the statement to defense counsel before the defendants' witness took the stand. Finally, the trial court's immediate admonishment to the jury that they alone were to give the experts' testimony the appropriate weight and his final charge that they were the sole judges of the facts weighed in the appellate court's decision that the defendants' trial was not unfair. *Washington*, 550 F.2d at 324 and n. 4.

Although not all of the factors enumerated in *Washington* are present here, that case confirms our conclusion that the trial judge's stipulation did not render Smalley's trial unfair. Reviewing the trial as a whole, the statement concerned only a peripheral matter that did not reflect upon Smalley's guilt or innocence. "[A]n occasional lapse of patience will not suffice to overturn a conviction returned after a full and fair presentation of the evidence." *United States v. Hill*, 496 F.2d 201, 202 (5th Cir.1974), *quoted in Allen v. Montgomery*, 728 F.2d 1409, 1416 (11th Cir. 1984).

### B. The Cotton Tapes

In late 1981 and early 1982, L.G. Cotton, a resident of Marshall County, agreed to cooperate in a government undercover operation against Smalley. He had several conversations with Smalley, five of which were taped. He told Smalley that he was operating a gambling game and wanted to establish a bootlegging and prostitution operation. He paid Smalley $1,000 on one occasion and from $100 to $200 on several other occasions. He eventually started the bootlegging business, using $200 loaned to him by Smalley.

The grand jury returned the indictment against Smalley on May 9, 1983. On June 1, Smalley filed a discovery and inspection motion. *See* Fed.R.Crim.P. 16. The government mailed transcripts of the Cotton tapes to Smalley on June 27, and Smalley claims that he did not receive them until June 30. Smalley filed on July 8 a motion to suppress all evidence regarding activities between Smalley and Cotton on the grounds of irrelevancy, immateriality, and the failure of the government to timely produce the taped conversations. The court struck the jury on July 13 and the trial began on July 14. The government made no reference to the Cotton conversations in its case in chief, but the court allowed the government attorney to cross-examine Smalley on them. The court prohibited the United States from introducing into evidence the tape recordings or the transcripts and from calling Cotton as a witness.

Smalley first argues that the government violated Rule 16 of the Federal Rules of Criminal Procedure by failing to timely produce the Cotton tapes pursuant to his discovery request. He concludes that the district court therefore erred in allowing the government to cross-examine him concerning the taped conversations.

Rule 16 reads in pertinent part as follows:

Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government. . . .

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Fed.R.Crim.P. 16(a)(1), (d)(2). This rule infuses the trial judge with a broad discretion. *United States v. Sarcinelli*, 667 F.2d 5, 5 (5th Cir. Unit B 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982) (decisions of a Unit B panel of the former Fifth Circuit Court of Appeals after September 30, 1981, are binding in the eleventh circuit).

■■■ The court below did not breach that discretion by allowing Smalley to be cross-examined about his conversations with Cotton. The government did disclose the existence and contents of the tapes two weeks before trial and three weeks before the government's use of them in court. Smalley has failed to show that he had inadequate time to prepare to meet them. Any impermissible prejudice was diffused by the court's refusal both to admit the tapes into evidence and to allow Cotton to testify and Smalley's denial before the jury of any impropriety in his dealings with Cotton.

■■■ Smalley further contends that the government's use of the Cotton conversations violated rules 402[10] and 404(b)[11] of the Federal Rules of Evidence. He misconstrues the government's tactics. Rules 402 and 404 deal with the *admission* of evidence. Here, the court received into evidence nothing pertaining to the Cotton conversations. Instead, the court allowed the government to use the tapes solely to impeach Smalley's claim—asserted during opening statement, direct testimony and closing argument—that he was a "good" sheriff who enforced the laws as well as he could and did not take bribes.

■■■ Matters affecting the credibility of the witness are always relevant on cross-examination. *See* Fed.R.Evid. 611(b).[12] The credibility of a witness may be attacked by reference to specific instances of his conduct as was done by the government in this case:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning his character for truthfulness or untruthfulness....

*Id.* 608(b). The Cotton conversations were clearly relevant to Smalley's veracity on direct examination. The trial court did not exceed his discretion in allowing the cross-examination and properly refused to admit any extrinsic evidence of the Cotton transaction.[13] *Cf. United States v. Herzberg,*

---

**10.** Rule 402 reads as follows:

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

**11.** Rule 404(b) states as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**12.** Rule 611(b) states as follows:

Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.

**13.** Smalley also hints at an argument based upon Federal Rule of Evidence 403, to which Rule 608(b) is subject. Fed.R.Evid. 608(b) advisory committee note. In this case, however, the danger of unfair prejudice, confusion of issues, or misleading the jury does not outweigh the probative value of the Cotton transaction to determining Smalley's credibility.

558 F.2d 1219, 1223–24 (5th Cir.) (trial court erred in allowing impeachment by extrinsic evidence on a collateral matter), *cert. denied,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1977).

AFFIRMED.