[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13223

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CARLOS MANUEL FUMERO CRUZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20545-DPG-1

_____

2                    Opinion of the Court                    20-13223

————————————

No. 20-13294

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARIO RAFAEL BAEZ JORGE,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20545-DPG-3

————————————

_____

No. 20-14502

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CARLOS MANUEL FUMERO CRUZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cr-20545-DPG-1

_____

Before ROSENBAUM, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

Codefendants Carlos Manuel Fumero Cruz and Mario Rafael Baez Jorge appeal their convictions for conspiracy to commit

access device fraud, possession of 15 or more access devices, unlawful possession of the means of identification of three people, and possession of access device making equipment. Jorge also appeals his 60-month prison sentence for the same offenses. We address each of their arguments in turn. After review,[1] we affirm Cruz's convictions and Jorge's convictions and sentence.

## I.  SUFFICIENCY OF THE EVIDENCE

Both Cruz and Jorge assert the evidence at trial was insufficient to support their convictions for unlawfully possessing the means of identification of three people identified in their superseding indictment.

Aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), requires proof "that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in § 1028A(c)." *United States v. Barrington*, 648 F.3d 1178, 1192 (11th Cir. 2011) (quotation marks omitted). The government must prove the defendant knew the identity he was using belonged to a real person and can prove this via circumstantial evidence. *United States v. Maitre*, 898 F.3d 1151,

---

[1] We review the sufficiency of the evidence *de novo*, "viewing the evidence in the light most favorable to the government and accepting all reasonable inferences in favor of the verdict." *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008). "We review a district court's evidentiary rulings for a clear abuse of discretion." *United States v. Flanders*, 752 F.3d 1317, 1334 (11th Cir. 2014).

1158-59 (11th Cir. 2018); *United States v. Delva*, 922 F.3d 1228, 1249-50 (11th Cir. 2019) (holding circumstantial evidence indicated the defendant knew identity belonged to a real person because the identity was used to fraudulently obtain refunds from the Internal Revenue Service, which verified the name and Social Security number of the person requesting the refund).

The law recognizes several kinds of possession, including actual possession and constructive possession. *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011) (discussing possession in the context of an 18 U.S.C. § 924(c) offense, *i.e.*, knowing possession of a firearm in furtherance of a drug-trafficking crime). Constructive possession can sustain a § 1028A conviction. *Maitre*, 898 F.3d at 1159. A person has constructive possession when he "has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession, even though he does not have actual personal dominion." *United States v. Baldwin*, 774 F.3d 711, 722 (11th Cir. 2014) (quotation marks omitted). Likewise, a person has constructive possession when he exercises "ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which the contraband is concealed." *Id.* (quotation marks and alteration omitted).

## A. Cruz

There was sufficient circumstantial evidence for the jury to conclude beyond a reasonable doubt that Cruz constructively possessed the means of identification of J.R., Y.L., and E.A, as charged in

Counts Three, Four, and Five. *See United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004) (explaining whether the evidence is direct or circumstantial, we accept all reasonable inferences that tend to support the government's case); *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996) (stating evidence is sufficient to support a conviction if a reasonable jury could find the evidence established guilt beyond a reasonable doubt). Based on the evidence presented at trial, a reasonable jury could conclude beyond a reasonable doubt that Cruz had dominion or control over the hotel suite in which J.R.'s and E.A.'s means of identification were found. *See Baldwin*, 774 F.3d at 722. Specifically, Cruz had rented the hotel room and was paying rent for it. His personal belongings were found in the suite, including a fraudulent driver's license and an invoice bearing his name, a safe containing a photograph of him and his girlfriend, a Glock handgun box containing his photograph, and a fraudulent credit card bearing his name and re-encoded with a stolen account number.

Cruz's contention that he had already left the hotel suite and was living with his girlfriend when law enforcement discovered the fraudulent activity is unavailing because the jury found him guilty despite his girlfriend's testimony and received the following evidence supporting a finding that he was still there. *See United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009) (stating credibility questions are the province of the jury, and we assume the jury resolved all such questions in a manner supporting its verdict); *United States v. Cruz-Valdez*, 773 F.2d 1541, 1545 (11th Cir.

1985) (*en banc*) (explaining the evidence is not required to exclude every reasonable hypothesis of innocence for a reasonable jury to find guilt beyond a reasonable doubt and the jury is free to choose among alternative, reasonable interpretations of the evidence). Cruz's personal belongings were recovered from the hotel suite after law enforcement discovered the fraudulent activity. Cruz had paid rent for the month in which the fraudulent criminal activity was discovered, and there was no evidence he had checked out of the hotel. Cruz's neighbor testified he regularly saw Cruz use the suite, including just days before the discovery of the fraudulent activity. Moreover, there was testimony that a blue Ford with an external gas tank—that Cruz's neighbor saw Cruz using—was at the hotel on the day when the fraudulent activity was discovered.

Likewise, the evidence was sufficient to demonstrate that Cruz had constructive possession of over 700 stolen credit card account numbers, including Y.L.'s account number, stored in the laptop recovered from codefendant Eduardo Dubed's truck. There was expert testimony the laptop belonged to and was used by Cruz. The only username on the laptop was "Carlo," which is one "s" shy of Cruz's first name, Carlos. Cruz's photographs and documents were saved on the laptop. The forensic laptop report showed Cruz's email and Facebook accounts were accessed from the laptop during the conspiracy period. The report also showed the laptop had been connected to the USB drive found in the safe containing Cruz's photograph.

Additionally, the evidence was sufficient to convict Cruz on the aggravated identity theft charges because a reasonable jury could

conclude beyond a reasonable doubt that Dubed possessed the means of identification and Cruz aided him in identity theft. Specifically, Cruz's and Dubed's personal belongings were recovered from the suite, in which both were registered occupants, and from which identity-theft paraphernalia was recovered. Both had frequent communication, which included 94 calls within a month, a message about re-encoding credit cards, and a chain of messages related to the purchase of external gas tanks. Accordingly, a reasonable juror could conclude beyond a reasonable doubt that Cruz aided and abetted his co-conspirator, Dubed, in aggravated identity theft. *See Calhoon*, 97 F.3d at 523; *Williams*, 390 F.3d at 1324.

In sum, there was sufficient evidence presented at trial for a reasonable jury to conclude beyond a reasonable doubt that Cruz constructively possessed the means of identification belonging to J.R., Y.L., and E.A. that were recovered from the hotel suite and laptop or that he aided and abetted his co-conspirator in doing so. *See Calhoon*, 97 F.3d at 523; *Baldwin*, 774 F.3d at 722. Therefore, we affirm as to this issue.

## B. Jorge

There was also sufficient circumstantial evidence for a reasonable juror to conclude beyond a reasonable doubt that Jorge constructively possessed the means of identification of J.R., Y.L., and E.A, as charged in Counts Three, Four, and Five. *See Calhoon*, 97 F.3d at 523. Because a § 1028A violation can be established by circumstantial evidence of constructive possession, Jorge is incorrect that

20-13223            Opinion of the Court            9

there must be a direct link between him and the stolen means of identification.

Based on the evidence, a reasonable juror could conclude beyond a reasonable doubt that Jorge had dominion or control over the hotel suite and therefore constructive possession of the means of identification belonging to J.R. and E.A. that were found in it. *See Williams*, 390 F.3d at 1324; *Calhoon*, 97 F.3d at 523; *Maitre*, 898 F.3d at 1159; *Baldwin*, 774 F.3d at 722. Jorge's personal belongings were found in both rooms in the suite—including his wallet that contained a card embossed with his name, his insurance card, his vehicle registration, a traffic ticket bearing his name, and his photograph. Jorge's personal belongings were intermingled in the suite with identity-theft paraphernalia, which included skimmers, soldering devices, a credit encoder, an embosser, specialty tools, and numerous credit cards and gift cards. Additionally, Jorge's testimony that he had invited women into the suite for an overnight stay suggests he did not simply store his belongings in the suite.

A reasonable juror could also conclude Jorge had constructive possession of Y.L.'s account number recovered from the laptop in Dubed's truck based on the following evidence connecting him to it. *See Calhoon*, 97 F.3d at 523; *Maitre*, 898 F.3d at 1159; *Baldwin*, 774 F.3d at 722. The laptop in Dubed's truck was connected to a USB drive, which was recovered from the suite. The truck was parked at the same hotel where Jorge and Dubed's personal belongings were recovered. Jorge slept in Dubed's truck at one point before moving into the suite. Jorge and Dubed's personal belongings were recovered

from the same suite, which was filled with identity-theft paraphernalia. Moreover, there was expert testimony that the laptop contained stolen account numbers—which were likely downloaded from skimmers via Bluetooth—and that Jorge's phone likely communicated with the gas pump skimmers via Bluetooth. Furthermore, Jorge and Dubed had frequent communications over the phone, including text messages from Jorge containing gas pump and skimmer locations. Accordingly, a reasonable juror could conclude beyond a reasonable doubt that Jorge had control and dominion of the laptop and therefore constructive possession of the account numbers within it.

While Jorge asserts there was no evidence he knew the means of identification belonged to real people, a reasonable juror could also conclude beyond a reasonable doubt that Jorge knew the stolen account numbers belonged to real people. *See Calhoon*, 97 F.3d at 523; *Williams*, 390 F.3d at 1324; *Delva*, 922 F.3d at 1249-50. Expert testimony indicated the account numbers recovered from the laptop and the USB drive in the hotel suite were likely retrieved using skimmers to obtain credit card information from gas pumps where people purchase gas. Because there was evidence indicating Jorge was involved in installing skimmers at gas pumps—including text messages about gas pump and skimmer locations from Jorge's phone to Dubed's phone and Jorge's phone's communication with Bluetooth devices similar to those in a skimmer seized from the suite—a reasonable juror could conclude Jorge knew the stolen means of identification belonged to real people. Additionally, Jorge's testimony he did not knowingly possess the stolen identity numbers was disbelieved by the

jury. Considering the other corroborating evidence, the jury's disbelief of his testimony can itself be used to establish the elements of his § 1028A offense. *See United States v. Brown*, 53 F.3d 312, 314-15 (11th Cir. 1995) (stating if the jury does not believe a defendant's testimony and there is corroborative evidence of the charged crime, the jury may consider the disbelieved statement as substantive evidence of the defendant's guilt and use it to establish elements of his offense).

Additionally, the evidence was sufficient for Jorge's conviction on the aggravated identity theft charges because he was also charged for aiding and abetting those crimes and the evidence was sufficient for a reasonable juror to conclude beyond a reasonable doubt Dubed possessed the means of identification and Jorge aided him in identity theft. *See* 18 U.S.C. § 2(a); *Calhoon*, 97 F.3d at 523; *Wiliams*, 390 F.3d at 1324. Specifically, the laptop was recovered from Dubed's truck, and Jorge had slept in Dubed's truck at one point. Jorge's and Dubed's belongings were recovered from a hotel suite filled with identity theft instrumentalities and fruits. Jorge and Dubed had frequent communication over the phone, including 99 calls over three weeks and text messages from Jorge containing gas pump and skimmer locations. Finally, Dubed had saved Jorge's name in his phone as "pincha," which roughly translated to fraud worker.

Accordingly, there was sufficient circumstantial evidence to support Jorge had constructive possession of the stolen means of identification specified in Counts Three to Five, he knew those identities

belonged to real people, and he aided and abetted his co-conspirator in doing so.  Accordingly, we affirm as to this issue.

## II. ADMISSION OF EVIDENCE

Both Cruz and Jorge also contend the district court erred by admitting evidence in violation of Federal Rule of Evidence 404(b). Cruz challenges the admission of allegedly incriminatory e-mails from before the period specified in his conspiracy charge and Jorge challenges the Government's cross-examination of him regarding his prior Kentucky credit-card-fraud charge and whether anybody had ever called him a credit card thief.

A district court may, during cross-examination, allow inquiries into specific instances of conduct if they are probative of the witness's character for truthfulness or untruthfulness.  Fed. R. Evid. 608(b).  "Except for a criminal conviction, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." *Id.* Matters affecting the credibility of a witness are always relevant on cross-examination.  *United States v. Smalley,* 754 F.2d 944, 951 (11th Cir. 1985).

Federal Rule of Evidence 404(b) forbids the admission of evidence of a crime, wrong, or other act to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character.  Fed. R. Evid. 404(b)(1).  However, such evidence may be admissible for other purposes, such as proof

of intent and absence of mistake. *Id.* 404(b)(2). To be admissible, Rule 404(b) evidence must (1) be relevant to an issue other than the defendant's character, (2) be sufficiently proven to allow a jury to find the defendant committed the extrinsic act, and (3) possess probative value that is not substantially outweighed by its undue prejudice under Federal Rule of Evidence 403. *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012). Rule 404(b), however, "deal[s] with the *admission* of evidence," not references to incidents used solely to impeach the defendant. *Smalley,* 754 F.2d at 951. Rule 608(b), and not Rule 404(b), is implicated where the government does not present extrinsic evidence and simply refers to a prior bad act to impeach a defendant's credibility within the scope of cross-examination. *Id.*

## A. Cruz

In Cruz's case, the district court did not violate Federal Rule of Evidence 404(b) because there is no evidence the Government included the full details and contents of the two e-mails in the forensic laptop report admitted into evidence and given to the jury. Cruz does not identify any portion of the record that supports his contention the Government admitted the full details of and attachments to the "emails of interest," and there is nothing in the record to support that contention. Rather, the record indicates the Government omitted the two emails' contents and attachments from the evidence submitted to the jury and that all parties, and the district court, understood that it was omitted.

Even if the court had admitted those two emails, Cruz has not shown their probative value would have been substantially outweighed by any prejudicial effect they might have had. *See Sanders*, 668 F.3d at 1314. Because Cruz does not identify the content of those emails, his argument the emails were unfairly prejudicial is based on little more than speculation. For this reason and Cruz's failure to show the emails were actually admitted as evidence at trial, we affirm as to this issue.

## B. Dubed

The district court did not violate Federal Rule of Evidence 404(b) by allowing the Government to ask Jorge about the Kentucky credit-card-fraud charge because the Government sought to do so only for impeachment purposes without presenting extrinsic evidence. The questioning was directly related to Jorge's testimony he had never used a skimmer or texted Dubed about skimmers and he had never possessed fraudulent or re-encoded access devices, he had never seen such a device, and he did not know anything about them. Because the Government sought to impeach Jorge's credibility and did not seek to present any extrinsic evidence while doing so, the impeachment implicated Rule 608(b), and not Rule 404(b). *See Smalley*, 754 F.2d at 951.

Because Jorge did not object, we review for plain error his challenge the Government's cross-examination on whether anybody had called him a credit card thief violated Rule 404(b). *See United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014) (stating when a party fails to object, we review the challenge under

a plain error standard of review). Jorge has not shown error, much less plain error, as he has not identified any statute or controlling precedent that establishes admission of his answers to those questions was error. *See United States v. Schultz*, 565 F.3d 1353, 1357 (11th Cir. 2009) (explaining an error is not "plain" unless it is contrary to explicit statutory provisions or controlling precedent from the Supreme Court or our Court). The questioning did not violate Rule 404(b) because, as with the questioning about the Kentucky charge, it was permissible under Rule 608(b) for impeachment purposes. *See Smalley*, 754 F.2d at 951.

Additionally, Jorge specifically requested the admission of the documentary evidence of the text messages in which his girlfriend called him a credit card thief. Therefore, he invited any error as to the admission of that evidence. *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (stating we do not review invited errors—errors that exist because a party's statements or actions induce the district court into making an error). Accordingly, we affirm as to this issue.

## III. SENTENCE

Jorge asserts the district court erred by ordering the Federal Bureau of Prisons (BOP) to award him time-served credit instead of reducing his sentence. A "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." 18 U.S.C. § 3585(b). In interpreting § 3585(b), the Supreme Court has held

the Attorney General, through the BOP, is authorized to compute time-served credit, not the district courts. *United States v. Wilson*, 503 U.S. 329, 333-35 (1992). Accordingly, a district court cannot award time-served credit under § 3585(b). *Id.*

If the district court determines the BOP will not award time-served credit, the court shall adjust the sentence for any period of imprisonment already served on an undischarged term of imprisonment. U.S.S.G. § 5G1.3(b)(1). District courts must consider § 5G1.3(b)(1), but it is not binding on them. *United States v. Henry*, 1 F.4th 1315, 1326 (11th Cir. 2021).

Jorge did not ask the district court to order the BOP to award him time-served credit but instead sought a sentence adjustment via § 5G1.3(b). Thus, contrary to the Government's argument, Jorge did not invite error. *See United States v. Jones*, 743 F.3d 826, 828 n.1 (11th Cir. 2014) (explaining we apply the invited-error doctrine when a party challenging an action affirmatively asked for it, not when a party merely fails to object). But because Jorge failed to object at sentencing to the ruling he now challenges on appeal, we review for plain error. *See Ramirez-Flores*, 743 F.3d at 822 (stating, to establish plain error, an appellant must show (1) an error occurred; (2) it was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings).

Jorge can establish the district court's order was erroneous and the error was plain because there is binding precedent that prohibits a district court from awarding time-served credit in the manner the district court did here. *See Wilson*, 503 U.S. at 333-35;

*Schultz*, 565 F.3d at 1357. Nonetheless, Jorge has failed to establish the error affected his substantial rights or that it seriously affected the fairness of the judicial proceedings. *See Ramirez-Flores*, 743 F.3d at 821-22. Specifically, Jorge has not shown the district court would have reduced his sentence if it had known it could not award the time-served credit. Jorge relies solely on U.S.S.G. § 5G1.3(b)(1) for his argument the district court intended he serve a reduced sentence, but that provision allows the court to reduce a sentence for time served only if it determines the BOP will not credit that time. Here, not only did the district court not make that finding, it was clear the district court expected the BOP would provide the credit. Moreover, Jorge has not established he has been deprived of the time-served credit. Even if the BOP denies him the credit, he can seek judicial review of that administrative action after exhausting his administrative remedies. *See Rodriguez v. Lamer*, 60 F.3d 745, 747 (11th Cir. 1995) (stating federal offenders seeking credit for time spent in presentence custody must first exhaust all administrative remedies through the BOP before seeking review in federal court). Because Jorge failed to establish the error affected his substantial rights and seriously affected the fairness of the judicial proceedings, we affirm as to this issue.

**AFFIRMED.**