[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13443

_____

D. C. Docket No. 07-20331-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JILDARDO MENDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 21, 2008)**

Before WILSON, COX and BOWMAN,* Circuit Judges.

PER CURIAM:

---

* Honorable Pasco M. Bowman II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Jildardo Mendez appeals his convictions for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1), and unlawful production of a Florida commercial driver's license ("CDL"), in violation of 18 U.S.C. § 1028(a)(1), (c)(3)(A), and (f), and 18 U.S.C. § 2 (Count 2). On appeal, Mendez argues that the record does not contain sufficient evidence of either (1) the requisite intent to defraud the United States under § 371, or (2) the requisite interstate commerce nexus under § 1028(a)(1) and (c)(3)(A). For the reasons set forth below, we reverse the conviction of Count 1 and affirm the conviction of Count 2.

## I.  BACKGROUND

Mendez and the government stipulated to the following facts. On February 14, 2007, an anonymous caller provided information to officers of the Florida Highway Patrol regarding fraudulently obtained CDLs. The caller explained that Steven Baez, a member of the Florida Army National Guard, was selling DA-348E forms for approximately $1,200 to $2,000. The DA-348E form is a Department of Army "Operator Qualification Record" that sets forth the fitness, training and equipment qualifications of its personnel who have qualified to operate commercial motor vehicles. The form is one way by which an individual may demonstrate his compliance with the Florida CDL requirements and thereby waive the completion

of the requisite Florida CDL testing.  The caller further explained that Baez had been providing these forms to non-military personnel and escorting them to the Homestead, Florida Department of Motor Vehicles ("DMV") to obtain CDLs.

A law enforcement investigation concerning Baez revealed that approximately 186 DA-348E forms had been fraudulently submitted at the Homestead DMV licensing branch.  The investigation also determined that Mendez obtained a Class A CDL on September 14, 2006 using a fraudulent DA-348E form of the same type as those that Baez sold.  Officers arrested Mendez on April 9, 2007, and Mendez waived his *Miranda* rights in writing.

During a post-arrest interview, Mendez stated that he had spoken via telephone to a man named Steven about obtaining a CDL because he thought his problems reading and writing English would prevent him from otherwise obtaining a CDL.  Pursuant to Baez's instructions, Mendez met Baez outside the Homestead DMV on September 14 with $1,000 cash.  In exchange for the money, Baez gave Mendez a form that Baez had filled out with Mendez's personal information, which Mendez had communicated to Baez during their phone conversation. Mendez then used the form to obtain a Florida CDL, which costs $50 and requires forfeiture of all other driver licenses.

Although Mendez recognized that Baez was wearing a United States military

3

uniform when they met, Mendez did not know the purpose of the DA-348E form or that it was a Department of Army form. Mendez did know, however, that an acquaintance had illegally obtained a CDL using a military form purchased from Baez.

The stipulation further provided that in traveling to the Homestead DMV, Mendez drove a motor vehicle, not a Class A vehicle, on public highways and roads. Mendez never bought or drove any Class A vehicle. Finally, the stipulation declared that using a driver's license involves operating a motor vehicle, which requires the purchase and consumption of gasoline that travels in interstate and foreign commerce.

A federal grand jury indicted Mendez, and later superceded that indictment charging him with (1) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and (2) unlawful production, and attempted unlawful production, of a Florida CDL, in violation of 18 U.S.C. § 1028(a)(1), (c)(3)(A), and (f), and 18 U.S.C. § 2. Mendez pled not guilty to both counts, and later waived his right to a jury trial. The district court did not hear any testimony and adopted the stipulated facts as true, but it did hear argument from counsel on the legal issues. It found Mendez guilty of both counts.

## II. STANDARD OF REVIEW

4

We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences in favor of the verdict. *United States v. Klopf*, 423 F.3d 1228, 1236 (11th Cir. 2005). When the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction. *Id.*

### III. DISCUSSION

### A. Intent to Defraud the United States

Mendez first argues that we must reverse his § 371 conviction because the record does not support the district court's finding that he intended to defraud the U.S. Department of Transportation ("DOT"). He concedes that he defrauded the Florida DMV, but he asserts that there is no evidence that he even knew of any connection between a Florida CDL and the federal government.

Under 18 U.S.C. § 371, it is a crime to "conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner of for any purpose . . . ." The proof required to support a § 371 conviction is different, however, depending on whether the defendant is charged with conspiracy to commit *any offense* against the United States or conspiracy to *defraud* the United States. In *United States v. Harmas*, 974 F.2d 1262 (11th Cir. 1992), we explained that under the "defraud" clause of § 371,

5

which is at issue here, "the government must prove that the United States was the ultimate target of the conspiracy," whereas under § 371's "any offense" clause, the government is not required to allege that the United States was the intended victim of the conspiracy. *Id.* at 1268. In so holding, we adhered to the Supreme Court's declaration in *Tanner v. United States*, 483 U.S. 107, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987), that "[t]he conspiracies criminalized by [the defraud clause of] § 371 are defined . . . most importantly . . . by the *target* of the conspiracy." *Id.* at 130, 107 S. Ct. at 2752.

It is clear that under *Tanner*, we must reverse Mendez's § 371 conviction. The *Tanner* defendants conspired to defraud Seminole Electric Cooperative, Inc., a private company. In order to complete a construction project, Seminole obtained a bank loan that was guaranteed by the federal Rural Electrification Administration ("REA"). *Id.* at 110, 107 S. Ct. at 2742. The defendants' § 371 conviction was based on their interference with the REA's operation of its guaranteed loan program. *Id.* at 128-29, 107 S. Ct. at 2752. The defendants argued that a conspiracy to defraud a private corporation that received financial assistance from the federal government does not constitute a conspiracy to defraud the United States. *Id.* at 129, 107 S. Ct. at 2752.

In response, the government argued that a conspiracy to defraud the United

6

States under § 371 may be effected by the use of third parties and that Seminole may itself be treated as "the United States" for purposes of § 371 because it received federal financial assistance and supervision. *Id.* The *Tanner* Court rejected the government's argument, reasoning that a conspiracy to defraud a third party is not itself a conspiracy to defraud the United States simply because the third party receives financial assistance from and is supervised by the United States. *Id.* at 130-32, 107 S. Ct. at 2752-54. The Court then held that the defendants' convictions could only stand if the evidence was sufficient to establish that they conspired to cause Seminole to make misrepresentations to the REA. *Id.* at 132, 107 S. Ct. at 2754.

Here, the district court found that by fraudulently obtaining the CDL, Mendez intended to defraud both the State of Florida, which issued the CDL, and the DOT, which promulgated the minimum rules and regulations for obtaining a CDL. The district court thus concluded that, beyond a reasonable doubt, Mendez had the requisite intent to defraud the United States under § 371.

We disagree. Mendez's § 371 conviction is precisely what the *Tanner* Court meant to prevent. The facts to which the parties stipulated do not show that Mendez even knew the federal government was in involved in the issuance of Florida CDLs, let alone that the United States was the ultimate intended target of

Mendez's conduct.  Accordingly, under *Tanner*, there was no basis for the district court to find that Mendez was guilty beyond a reasonable doubt of defrauding the United States under 18 U.S.C. § 371.

The government argues that Mendez's payment for and use of the DA-348E form to obtain the CDL was enough to satisfy § 371's intent requirement.[1]  In support of its argument, the government points to the first sentence of the introduction section in the Florida CDL handbook, which describes the "federal requirement that each state have minimum standards for the licensing of commercial drivers."  Additionally, the government cites the Florida DMV website, which advises CDL applicants of federal guidelines.  Given those facts, the government contends, it is reasonable to infer that Mendez knew of the federal involvement in the issuance of Florida CDLs.

Those facts, however, were not included in the trial stipulation, and therefore are not part of the record.  Even if we were to accept such facts as circumstantial evidence, they would not be strong enough to support Mendez's § 371 conviction because the stipulation indicates that Mendez had difficulty reading English.

---

[1] The government also asserts that Mendez defrauded the United States Army.  Mendez correctly recognizes, however, that this theory was neither in the indictment nor presented at trial.  Accordingly, we may not affirm the conviction on this basis.  *See United States v. Elkins*, 885 F.2d 775, 782 (11th Cir. 1989) ("This Court cannot affirm a criminal conviction based on a theory not contained in the indictment, or not presented to the jury.") (citation omitted).

8

Accordingly, we conclude that it would be mere speculation, rather than a reasonable inference, to conclude that Mendez intended to defraud the DOT based on the references to the federal government in the CDL handbook and Florida DMV website.

The Ninth Circuit faced similar facts and reached a similar conclusion in *United States v. Licciardi*, 30 F.3d 1127 (9th Cir. 1994). The defendant in *Licciardi* was a grape broker who defrauded a wine producer and was charged under the defraud clause of § 371 because of the regulatory involvement of a federal agency, the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), in the wine industry. *Id.* at 1128-29. The Court held that the basis suggested in *Tanner* for upholding a defendants' § 371 conviction was lacking because the government failed to show anything beyond the defendants' incidental impairment of ATF functions.[2] *Id.* at 1132. "It might have been easy," the Court explained, "for the government to establish that Licciardi was familiar with the federal regulations on the labelling of wine and that it was a necessary part of his plan of deceit that [the defrauded wine producer] provide information to the government that would frustrate these regulations," but the government did not do so. *Id.*

The government's case is weaker here than it was in *Licciardi*. Given the

---

[2] Licciardi's conviction was affirmed on other grounds. *Licciardi*, 30 F.3d at 1134-35.

9

stipulated facts, it would require much greater speculation for us to infer that Mendez knew of the DOT's involvement in the issuance of Florida CDLs than the speculation that would have been required for the Ninth Circuit to infer that Licciardi, himself a grape broker, did not foresee the effect of his fraudulent activity on the ATF.

Finally, the government argues that knowledge that the United States is to be defrauded is not a necessary element of a § 371 offense. In support of its argument, the government cites *United States v. Sorrow*, 732 F.2d 176, 177-79 (11th Cir. 1984), in which we held that the defraud clause of § 371 does not require proof of anti-federal intent. The government also relied on *Sorrow* in *Licciardi*, but the Ninth Circuit commented, "[i]t is doubtful that *Sorrow* survives *Tanner*." *Licciardi*, 30 F.3d at 1132. We concede that *Sorrow* is superceded by the Supreme Court's holding in *Tanner*, and we hereby expressly overrule *Sorrow*.[3]

## B. Interstate Commerce Nexus

Mendez also argues that we must reverse his § 1028(a)(1) conviction because his crime did not sufficiently affect interstate commerce. He contends that if driving on public roads satisfies the minimal interstate nexus requirement, all

---

[3] When a prior panel decision conflicts with a subsequent Supreme Court decision, we must depart from the prior panel precedent and follow the Supreme Court decision. *Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir.1996).

local crimes would be federalized.

Under 18 U.S.C. § 1028(a)(1) and (c)(3)(A), it is a crime to unlawfully produce an identification document when the production "is in or affects interstate or foreign commerce." To satisfy the interstate commerce requirement, however, the government need only show a minimal nexus. *Klopf*, 423 F.3d at 1239. The government may prove the requisite minimal nexus by showing either that the defendant's actions actually affected interstate commerce, *see* 18 U.S.C. § 1028(c)(3)(A), or by showing that the defendant "had the intent to accomplish acts, which, if successful, would have affected interstate or foreign commerce." *Klopf*, 423 F.3d at 1239.

The district court found Mendez guilty based on the crime's actual affect on interstate commerce. We need not decide that issue, however, because we hold that the district court could have found beyond a reasonable doubt that Mendez intended to accomplish acts that would have affected interstate commerce if they had been successful. Specifically, the stipulated facts show that Mendez paid $1000 to fraudulently obtain the CDL. That alone is sufficient evidence that Mendez intended to use the CDL in a manner that would have affected interstate commerce. Mendez clearly intended to operate a commercial vehicle, and operating a commercial vehicle illegally, even if the vehicle never leaves Florida,

11

sufficiently affects interstate commerce to satisfy the minimal nexus requirement.

Accordingly, under *Klopf*, we must affirm Mendez's conviction of Count 2.

## CONCLUSION

Because the United States was not the target of Mendez's crime, we reverse Mendez's conviction under 18 U.S.C. § 371. We affirm Mendez's conviction under 18 U.S.C. § 1028(a)(1), however, because Mendez's intent in fraudulently obtaining the CDL was clearly to illegally operate a commercial vehicle, which would sufficiently affect interstate commerce.

**AFFIRMED IN PART, REVERSED IN PART.**