[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12066
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cr-00188-WTM-GRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAMARLVIN WATTS,
a.k.a. Lamarlvin Arkeena Watts,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 24, 2018)

Before MARTIN, JILL PRYOR, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

Lamarlvin Watts appeals his convictions and sentences for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). His appeal raises three issues: (1) whether the district court erred in denying his motion for judgment of acquittal based on insufficiency of the evidence; (2) whether the district court denied him his constitutional right to testify; and (3) whether the district court correctly applied the sentencing guideline enhancement for obstruction of justice, U.S.S.G. § 3C1.1,[1] based on Watts's attempt to avoid identification by covering up his distinctive tattoos. For the following reasons, we affirm.

## I.    BACKGROUND

On July 14, 2015, an armed robber entered a Wells Fargo Bank branch in Savannah, Georgia, and demanded money from the bank teller while brandishing a .22-caliber handgun. He wore a camouflage bandana to cover his face and a yellow hat. The robber escaped with approximately $2,400 in cash, and a hat and bandana matching were found nearby. Using security footage and eyewitness accounts, the police were able to complete a description of the suspect as a black male wearing

---

[1] "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1.

dark pants, black and white athletic shoes, and blue latex gloves. The robber also had tattoo on his neck with the letter "U" visible and another tattoo on his forehead between his eyes in the shape of a small cross.

Acting on a confidential tip, the police arrested Watts the following day. A search of his residence and vehicle turned up, among other things, several .22-caliber rounds, sneakers that were similar in appearance to the black and white sneakers of the robber, and a blue latex glove. The search also uncovered .38-caliber rounds and a .38 caliber revolver in his vehicle, a bandana of a different color than the one used in the robbery, and $319 in cash which the police were unable to link to the stolen currency.

The evidence at trial included text messages and a call log from Watts's mobile phone. The texts showed that after media reports came out on the day of the robbery, Watts was actively texting his friends, trying to find someone who could alter tattoos. The next day he contacted a tattoo artist who had done previous tattoos for Watts, seeking to modify the tattoos on his forehead (a small cross) and neck (spelling out "TRU"). The tattoo artist testified at trial that he covered up Watts's neck tattoo with an image of doves and a cloud, and modified the cross on Watts's forehead to be a Japanese symbol.

3

The FBI's forensic examiner testified that DNA obtained from the hat discovered near the scene was from "at least three individuals" and that the results of the DNA comparison were inconclusive.

On the second day of trial, Watts requested permission to proceed pro se. The court ultimately granted his request, but required Watts's attorney to remain in an advisory role. Watts requested a continuance more than once, but the court denied those requests.

After the government rested its case, the court notified Watts that he had a right to testify on his own behalf and he responded, "I would. I would like to." At that point, he had an off-the-record discussion with his attorney. The court then asked him again if he would like to testify, and he responded, "I do not." The court then stated that since it had denied Watts's request for a continuance and there were no other witnesses to be called for the defense, the defendant's case was closed. Watts again stated "I'm willing to testify, Your Honor. May I have –" at which point the transcript simply notes that another "off-the-record discussion was held between the defendant and his counsel." Watts did not pursue his request to testify after that second conversation with counsel.

Watts stated that he would make closing arguments on his own behalf. He stated, "But before we come to this rest, Your Honor, may I come to understand that the grounds of my testimony, like can I consult with my lawyer before we rule

4

that out?" Yet another off-the-record discussion immediately ensued between Watts and his advisory counsel. The court then stated that there would be a brief recess before closing arguments, and Watts asked, "You're not going to rule on my-" but was interrupted by the court. After the brief recess, the court stated that it found "that the defendant's decision not to testify was . . . made knowingly and voluntarily and also his decision to proceed pro se was made knowingly and voluntarily."

The jury convicted Watts on both counts. He then renewed his motion for judgment of acquittal and moved for a new trial. The court denied his motions, finding that Watts provided no support for his allegations that the government failed to prove him guilty beyond a reasonable doubt.

At sentencing, the presentence report applied a two-level enhancement to the offense level under U.S. Sentencing Guidelines Manual § 3C1.1 because Watts "willfully" obstructed or impeded the administration of justice, or attempted to do so, by having the identifying tattoos on his face and neck altered or "covered up." With a resulting offense level of 24 and his criminal history category of II, the guidelines range for the armed bank robbery was 57 to 71 months imprisonment. The conviction for brandishing a firearm during a crime of violence required a mandatory minimum of 84 months imprisonment, consecutive to any other term of imprisonment imposed.

5

Watts objected to the two-level enhancement for obstruction of justice, arguing that his conduct in attempting to cover his tattoos should not be considered obstruction under the guidelines. The court noted his objection, but adopted the factual statements in the presentence report and applied the enhancement. The court sentenced Watts to 148 months imprisonment, a term that is within the guideline range calculated in the presentence report but which would have been above the guideline range if the two-level enhancement had not been applied.

## III.    DISCUSSION

### A. Sufficiency of the Evidence

When a defendant preserves a challenge to the sufficiency of the government's evidence by moving for a judgment of acquittal, we review the sufficiency of the evidence de novo. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). We determine whether the evidence was sufficient for a reasonable jury to conclude that the defendant was guilty beyond a reasonable doubt. United States v. Gupta, 463 F.3d 1182, 1193–94 (11th Cir. 2006). We view all evidence in the light most favorable to the government, resolving any conflicts in favor of the government's case. United States v. Frank, 599 F.3d 1221, 1233 (11th Cir. 2010). A "jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Herrera, 931 F.2d 761, 762

6

(11th Cir. 1991). Similarly, "[t]he evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). The test for sufficiency of the evidence is identical regardless of whether the evidence is direct or circumstantial, and "no distinction is to be made between the weight given to either direct or circumstantial evidence." United States v. Mieres–Borges, 919 F.2d 652, 656–57 (11th Cir. 1990) (quoting United States v. Gonzalez, 719 F.2d 1516, 1521 (11th Cir.1983), cert. denied, 465 U.S. 1037, 104 S. Ct. 1312 (1984)). "When the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction." United States v. Mendez, 528 F.3d 811, 814 (11th Cir. 2008).

To support a conviction of bank robbery under 18 U.S.C. § 2113(a), the government must prove that a defendant "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any property or money or any other thing of value belonging to . . . any bank," or that a defendant "enters or attempts to enter any bank . . . with intent to commit in such bank . . . any felony affecting such bank." 18 U.S.C. § 2113(a). To prove armed bank robbery, the government must show that the defendant, in committing or attempting to commit an offense defined in subsection (a), "assaults any person,

7

or puts in jeopardy the life of any person by the use of a dangerous weapon or device." Id. § 2113(d).

A conviction for brandishing a firearm during a crime of violence requires the government to prove, among other elements, that the defendant "display[ed] all or part of the firearm, or otherwise [made] the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm [was] directly visible to that person" during a crime of violence. 18 U.S.C. §§ 924(c)(1)(A)(ii), 924(c)(4).

Watts argues primarily that: the eyewitnesses did not positively identify him as the robber; there was no forensic evidence, including fingerprints or DNA analysis, that identified him; the hat and bandana worn by the bank robber were not recovered in his possession; the cash recovered from him was not tied to the bank robbery; the firearm found in his possession was of a different caliber than the one used in the robbery; and there was no location data or communications about a bank or robbery recovered from his phone. All of these facts, he asserts, show a lack of sufficient evidence to support his convictions for armed bank robbery and brandishing a firearm during a crime of violence.

Watts describes the evidence as equally supporting guilt and innocence. While Watts correctly points out some evidence that does not help support the conviction, none of it is exonerating. And there was other evidence against Watts

8

that the jury apparently found to be dispositive, and reasonably so. That evidence included: his similar appearance to the eyewitness accounts, including his distinctive tattoos and his haste to have them modified; a blue latex glove found in his car, similar to the gloves used by the robber; shoes found in his car that matched the appearance of the robber's shoes; and the same caliber ammunition found in his possession as would be used in the weapon shown by the bank robber to the victims. In sum, there was ample circumstantial evidence for a reasonable jury to conclude beyond a reasonable doubt that Watts: (1) robbed the bank with a dangerous weapon; and (2) brandished a firearm during the commission of that offense.

Watts cites Cosby v. Jones for the proposition that if a "reviewing court is convinced by the evidence only that the defendant is more likely than not guilty then the evidence is not sufficient for conviction." 682 F.2d 1373, 1379 (11th Cir. 1982). But Cosby also states that "[i]t is only where, after viewing the evidence in its most favorable light and making all credibility decisions in favor of the state the evidence still fails to at least preponderate in favor of the state, that we become concerned with conflicting inferences." 682 F.2d at 1383. Watts cannot prevail on this claim if "any reasonable construction of the evidence would have allowed the jury to find [him] guilty beyond a reasonable doubt." Herrera, 931 F.2d at 762. Watts has not met this high bar here, and so we hold that the evidence, especially

9

when viewed in the light most favorable to the government, was sufficient to support his convictions. See Frank, 599 F.3d at 1233 ("We review the sufficiency of the evidence . . . viewed in the light most favorable to the government."); Mendez, 528 F.3d at 814 ("We review the sufficiency of the evidence . . . accepting all reasonable inferences in favor of the verdict.").

## B. Right to Testify

Watts argues that the district court violated his constitutional right to testify on his own behalf. In particular, he argues that as a pro se defendant, when the court raised the topic of his ability to testify, it did not sufficiently explain his options to ensure an intelligent decision, as required by United States v. Ly, 646 F.3d 1307, 1312-13 (11th Cir. 2011). He also contends that the court should have allowed him to take the stand when he asked to do so.[2]

We review de novo a claim that the district court denied a defendant's right to testify. Ly, 646 F.3d at 1312. A criminal defendant has a fundamental right to choose whether to testify in his defense, and that right is "truly protected only when the defendant makes his decision knowingly and intelligently." Id. at 1313. When a defendant is represented by counsel, that counsel is "responsible for providing the advice needed to render the defendant's decision" knowing and intelligent. Id. In those cases, the district court "does not normally engage in a

---

[2] Watts also repeatedly asked for a continuance and was denied by the court. Those requests, however, are not the subject of his appeal.

10

colloquy with the defendant to ensure that the decision was made knowingly and intelligently" because such a colloquy would "improperly disturb the attorney-client relationship" and would "suggest that the district court believed the defendant's choice improvident." Id.

In contrast, when a defendant proceeds pro se, the defendant often does not have the benefit of any counsel to ensure a knowing and intelligent decision. In Ly, we noted that, "absent evidence to the contrary, district courts should presume" that even a pro se defendant has made a knowing and intelligent decision about whether to testify. Id. at 1317. We explained, however, that "a district court can—and sometimes must—aid an ignorant pro se defendant." Id. at 1316. In particular, there are "exceptional, narrowly defined circumstances" that trigger a district court's duty to discuss with a criminal defendant his decision of whether to testify. Id. at 1316–17. For example, in Ly the defendant specifically stated multiple times that he could not testify without his counsel available to ask him questions—a mistaken belief that was not addressed by the district court. Id. at 1311–12. We concluded in Ly that the district court erred by failing to correct the defendant's misunderstanding of his right to testify. Our conclusion rested on the finding that the district court "clearly knew [the defendant] did not understand that he could testify in narrative form," that his misunderstanding "drove his decision not to

11

testify," and that the district court's failure to correct the misunderstanding "reinforced [the defendant's] mistaken view." Id. at 1317.

This case presents a wholly different set of circumstances from Ly. On the occasions when Watts asked the court if he could testify prior to the close of evidence,[3] he had an off-the-record discussion with his advisory counsel and ultimately changed his mind. Despite proceeding pro se, he did have the benefit of the advice of his former counsel in an advisory role, and there was no indication that Watts held a mistaken belief regarding his ability to testify. Accordingly, this case does not fall into one of the "exceptional, narrowly defined circumstances" contemplated by Ly.

Watts argues in the alternative that the court should have let him testify after he requested to do so, arguing that he made his requests at the appropriate times. In this circuit, the "right to testify generally must be exercised before the evidence-taking portion of the trial has closed." United States v. Byrd, 403 F.3d 1278, 1287 (11th Cir. 2005).  Watts attempts to distinguish Byrd because the exchange regarding his testimony occurred after the government had concluded its case but before he had rested his case.

Watts asked to testify more than once. First, he asked before the close of evidence when the court notified him of his right to testify. But he then changed

---

[3] Watts also requested to testify after the close of evidence. That request presents a different issue, which we will consider next.

his mind after speaking with his advisory counsel and unequivocally stated that he did not want to testify. The court then concluded that Watts's case was closed. Watts asked to testify a second time, but once the court decided that Watts had rested his case, it was under no obligation to reopen the case when Watts made subsequent requests. See Id.[4]

In this case, the court specifically found that Watts made his decision not to testify "knowingly and voluntarily." The record does not rebut the presumption that Watts made his decision not to testify knowingly and voluntarily, even if he later had second thoughts.[5] See Ly, 646 F.3d at 1317 ("[A]bsent evidence to the contrary, district courts should presume that the defendant, even a pro se defendant, has made a knowing and intelligent decision about whether to testify.").

### C. Enhancement for Obstruction of Justice

In reviewing the district court's imposition of a sentencing enhancement for obstruction of justice, we review the district court's factual findings for clear error

---

[4] Byrd also anticipates that there will be some cases where it is appropriate for the court to reopen the case to allow for the defendant to testify, and establishes a multi-factor framework for making that determination. Byrd, 403 F.3d at 1283 ("We, like the First Circuit, will consider the factors developed in United States v. Walker, 772 F.2d 1172 (5th Cir.1985), in assessing whether the district court abused its discretion in deciding not to reopen the evidence so that Byrd could testify."). Watts does not analyze these factors, and instead argues that the request was made at the appropriate time.

[5] Watts argues that the alleged denial of his right to testify is a "structural error" that requires reversal of his conviction automatically. United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S. Ct. 2557, 2564 (2006) (holding that "structural errors" are not subject to a "harmless-error" standard, and require automatic reversal). We find that the district court did not deny his right to testify, and so we do not reach the question of whether such an error is structural.

and review the application of the factual findings to the Sentencing Guidelines de novo. United States v. Doe, 661 F.3d 550, 565 (11th Cir. 2011).

In United States v. Alpert, we explained that meaningful appellate review requires a sentencing court applying an enhancement for obstruction of justice to explain what the defendant did, "why that conduct warrant[ed] the enhancement," and "how that conduct actually hindered the investigation or prosecution of the offense." 28 F.3d 1104, 1107–08 (11th Cir. 1994) (en banc). If, however, the record clearly reflects the basis for the enhancement and supports it, further factual findings on remand are unnecessary. United States v. Taylor, 88 F.3d 938, 944 (11th Cir. 1996). At Watts's sentencing hearing, the district court adopted the statements in the presentence report as its finding of fact, and found that "the facts of this case showed that the defendant attempted to obstruct or impede the administration of justice with respect to the investigation and the prosecution of this case by altering distinct physical features of his tattoos that the investigators were looking for in an attempt to identify the person who was the bank robber." Accordingly, by explaining how Watts's specific conduct was designed to hinder the investigation and thereby warranted the enhancement, the court's decision to apply the enhancement included sufficient explanation to comport with Alpert.

Pursuant to the Sentencing Guidelines, a defendant's offense level will be increased by two levels if:

14

(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1 (2016).

The commentary for § 3C1.1 explains that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." Id. § 3C1.1 comment. (n.3).[6] The non-exhaustive list of covered conduct includes, "destroying or concealing . . . evidence that is material to an official investigation." Id. § 3C1.1 comment. (n.4(D)). "Material" evidence is evidence "that, if believed, would tend to influence or affect an issue under determination." Id. § 3C1.1 comment. (n.6). The § 3C1.1 enhancement does not ordinarily apply to defendants who provide a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation. Nor does it apply to those who avoid or flee from arrest. Id. § 3C1.1 comment. (n.5(A), (n.5(D)); Alpert, 28 F.3d at 1107.

In this case, Watts did far more than only try to avoid arrest. The identity of the robber was the primary issue in the investigation, and his distinctive tattoos

---

[6] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993); see also United States v. Hall, 714 F.3d 1270, 1272 (11th Cir. 2013).

were a key factor, i.e., material evidence. Watts suggests that applying the enhancement to the facts of this case would broaden the enhancement to cover any situation where a defendant altered his appearance to avoid arrest. For example, he cites United States v. Bliss, 430 F.3d 640 (2d Cir. 2007), in which the enhancement did not apply to a defendant that gained weight and grew a mustache prior to his arrest, and United States v. Bond, 933 F.2d 152 (2d Cir. 1991), which held the enhancement did not apply to a defendant who dramatically changed his hair style and clothing. Yet in each of those cases the enhancement did not apply because there was not sufficient evidence to show that the defendant had the purpose of thwarting the investigation. Bond, 933 F.2d at 154; Bliss, 430 F.3d at 651. Moreover Watts's conduct in this case was far more obstructive to the investigation than a mere disguise. As the trial court explained at his sentencing, Watts's actions altered "distinct physical features of his tattoos that the investigators were looking for." In other words, by permanently altering his identifying marks, he destroyed material evidence.

Watts argues that without specific Sentencing Guideline commentary examples directly on point, the rule of lenity should apply. "The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused." United States v. Wright, 607 F.3d 708, 716 (11th Cir. 2010) (William Pryor, J., joined by Fay, J., concurring).

16

Whether the rule of lenity can be applied to the non-statutory advisory Sentencing Guidelines is an open question upon which this Court has cast doubt, but we do not have to address that question here. Id.; see also United States v. Burke, 863 F.3d 1355, 1360 (11th Cir.), cert. denied, 138 S. Ct. 277 (2017). There is no ambiguity in the enhancement for obstruction of justice that would call for applying the rule of lenity in this case because material evidence was destroyed. See Wright, 607 F.3d at 713 (11th Cir. 2010) ("Because the Sentencing Commission's intent is clear, we need not address the rule of lenity.").

Accordingly, the district court did not err in applying the § 3C1.1 enhancement based on Watts's affirmative actions to destroy or conceal material evidence that identified him as the bank robber. See U.S.S.G. § 3C1.1 comment. (n.4(D)), (n.6).

## IV. CONCLUSION

For the forgoing reasons, the judgment of the district court is **AFFIRMED.**

17