[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14215
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cr-10026-JLK-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MISTY MARIE HOWARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 18, 2019)

Before TJOFLAT, JILL PRYOR and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Misty Marie Howard appeals her 24-month sentence, which was imposed after she pled guilty to one count of conspiring to possess with intent to distribute detectable amounts of crack cocaine and oxycodone.  On appeal, Howard argues that in calculating her offense level the district court erred in refusing to apply a two-level downward adjustment for her minor role and in applying a two-level enhancement for obstruction of justice.  After careful review, we conclude that the district court did not err in refusing to apply the minor role enhancement.  Regarding the obstruction-of-justice enhancement, we must remand because the district court failed to provide sufficient findings for us to review its decision.  We thus affirm in part and vacate in part.

## I.     BACKGROUND

### A.     The Drug Transactions

This case arises out of four transactions in which Howard and her boyfriend, co-defendant Willie Evens, sold crack cocaine and oxycodone to a buyer who was working for the government as a confidential source.  Before the first transaction, Evens spoke with the buyer on the phone.  They agreed to meet so that the buyer could purchase oxycodone pills and crack cocaine.  Howard accompanied Evens to the meeting where the buyer paid $1,670 for the drugs.

Over the course of several phone calls and text messages, Evens and the buyer arranged a second drug transaction. When Evens, Howard, and the buyer met for a second time, the buyer paid Evens $1,750 for oxycodone pills.

For the third transaction, Evens and the buyer again exchanged phone calls and text messages. Again, Howard accompanied Evens to the meeting. At the meeting, the buyer paid Evens $1,750 in cash. Howard then passed him a cigarette box that contained oxycodone pills.

Shortly after the third transaction, Evens was arrested on a federal firearms charge. After Evens's arrest, Howard contacted the buyer and told him that she still was selling narcotics. Over a series of text messages, she arranged a fourth transaction. Howard met the buyer in a parking lot where he paid her $370 for 10 oxycodone pills.

## B.    Procedural History

A grand jury charged Howard and Evens with one count of conspiracy to possess with intent to distribute a controlled substance as well as substantive counts of possession with intent to distribute a controlled substance. Based on the indictment, arrest warrants were issued for Howard and Evens. Evens, who was already in custody on the firearms charge, was promptly arraigned. Evens pled guilty to the conspiracy count in exchange for the government dismissing the remaining counts.

Howard was given two opportunities to self surrender but instead fled from law enforcement.  Approximately six months after the first self-surrender date, Howard was arrested by the United States Marshals Service.  She subsequently pled guilty to the conspiracy count in exchange for the government dismissing the remaining charges.

In advance of sentencing, the probation office prepared a presentence investigation report ("PSI").  Based on the quantity of drugs involved in the offense, the probation officer found Howard's base offense level was 16.  The probation officer then applied a two-level enhancement for obstruction of justice.  The probation officer stated that the enhancement was warranted because Howard had been given two opportunities to self surrender but failed to turn herself in.  The probation officer also concluded that Howard made a false statement, explaining that when she failed to show up for the first self-surrender date, she was called from court, and she reported that she was on her way but was having car trouble.  Despite making this statement, Howard never showed up to court.  The probation officer also applied a two-level reduction for acceptance of responsibility, yielding a total offense level of 16.  Based on the total offense level and Howard's criminal history category of II, the probation officer calculated Howard's total guideline range as 24 to 30 months' imprisonment.

4

Howard raised several objections to the PSI.  First, she asserted that the probation officer should have applied a two-level reduction to her offense level under U.S.S.G. § 3B1.2 because she played only a minor role in the offense.  Second, she argued that the probation officer should not have applied the two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  Howard acknowledged that she fled prior to her arrest but argued that her conduct did not constitute obstruction of justice.  Third, she requested that the court grant her a downward variance to avoid an unwarranted sentencing disparity with Evens, who had been sentenced to only 18 months' imprisonment for his role in the drug transaction.[1]

The government filed a written response to Howard's objections.  In addressing the obstruction-of-justice enhancement, the government provided a more detailed narrative about the circumstances surrounding Howard's failure to self surrender.  The government explained that after Howard was charged, she retained counsel who contacted the government and requested that she be allowed to self surrender.  The government agreed and set a specific time for her surrender, arranging it so that she could make her initial appearance before a magistrate judge

---

[1] At the time Evens was sentenced, he was serving a separate 70-month sentence on the federal firearms arms charge, for which he had been arrested after the third drug transaction.  The district court ordered that his 18-month sentence in this case was to run concurrently with the sentence for the firearms offense.

5

on the same day.  But on the agreed-upon date, Howard failed to appear.  That day, she told her attorney that she was having car trouble but was on her way to court.  Her attorney then communicated this statement to the magistrate judge.  Although the magistrate judge, prosecutor, case agents, and marshals agreed to wait for Howard, she never came to court.  When Department of Homeland Security ("DHS") agents subsequently were unable to locate her, her case was transferred to fugitive status.

Several months later, Howard was contacted by a DHS agent, and she again agreed to self surrender.  On the morning when she was supposed to turn herself in, Howard texted the agent, stating that she was waiting for an Uber car, then later texted that she was taking a bus.  When the agent called Howard and offered to pick her up, she hung up on him.  She never showed up to meet the agent.  Several days later, she was arrested.

After the government filed its response, the probation officer prepared an addendum to the PSI.  In the addendum, the officer responded to Howard's objections.  Regarding the obstruction-of-justice enhancement, the addendum largely repeated the information in the initial PSI about how Howard had provided false information when she stated on her first self-surrender date that she had car trouble but was on her way to court.  The addendum, like the initial PSI, noted that

6

she was given a second opportunity to self surrender, but it identified no false statement that she made in connection with her second failure to self surrender.

At the sentencing hearing, Howard renewed her objections to the PSI, which the district court overruled. In overruling the objection to the obstruction enhancement, the district court adopted the reasoning in the addendum to the PSI. Accordingly, the district court found that Howard had twice failed to self surrender and made a false statement when, on the first scheduled self-surrender date, she reported that she was on her way to court and was having car trouble but then did not show up. Neither the addendum nor the court offered any explanation about why the false statement was material or how it significantly impeded the prosecution.

The court then considered Howard's objection regarding the minor-role reduction. The court found that she had more than a minor role in the criminal activity. The court noted that she was present at each drug transaction and coordinated the last transaction on her own.

The court adopted the PSI's guidelines calculation, which yielded a recommendation of 24 to 30 months' imprisonment. Howard renewed her request for a downward variance, arguing that her sentence should be reduced to avoid an unwarranted disparity with Evens's 18-month sentence. The court denied the

variance.  After considering the § 3553(a) factors, the court imposed a sentence of 24 months' imprisonment.  This is Howard's appeal.

## II.    ANALYSIS

Howard argues that the district court made two errors in applying the Sentencing Guidelines.  She contends that the court erred in refusing to apply a downward adjustment for her minor role and in applying an enhancement for obstruction of justice.  We consider these arguments in turn.

**A.    The District Court Did Not Clearly Err in Refusing to Apply a Minor-Role Adjustment.**

Howard first argues that the district court erred in denying her a two-level reduction in offense level under U.S.S.G. § 3B1.2(b) because of her minor role in the offense.  Because the district court's determination of a defendant's role in the offense is a factual finding, we review it only for clear error.  *United States v. Rodriguez de Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).  "A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).  But a "district court's choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error so long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law."  *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016)

8

(alteration adopted) (internal quotation marks omitted).  We cannot say that the district court's determination that Howard had more than a minor role was clearly erroneous.

The Sentencing Guidelines provide for a two-level reduction to a defendant's offense level if she was a minor participant in the criminal activity. *See* U.S.S.G. § 3B1.2(b).  A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."  *Id.* § 3B1.2, cmt. n.5.  The question of whether a defendant is entitled to a minor-role reduction is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  *Id.* § 3B1.2, cmt. n.3(C).  The defendant has the burden of proving her minor role in the offense by a preponderance of the evidence. *Rodriguez de Varon*, 175 F.3d at 939.

Two principles guide the determination of whether a defendant played a minor role in a criminal scheme:  (1) "the defendant's role in the relevant conduct for which she has been held accountable at sentencing," and (2) "her role as compared to that of other participants in her relevant conduct."  *Id.* at 940.  In addition, commentary to § 3B1.2 provides additional guidance on when a minor role reduction is appropriate, directing district courts to consider:  (1) the degree of the defendant's understanding of the scope and structure of the crime; (2) the

9

degree of the defendant's participation in the planning or organization of the crime; (3) the degree of the defendant's decision-making authority; (4) the nature and extent of the defendant's participation in the crime, including the acts she performed and how much discretion and responsibility she had; and (5) how much the defendant stood to benefit from the crime.  U.S.S.G. § 3B1.2, cmt. n.3(C).

Here, the district court did not clearly err when it found that Howard had more than a minor role.  After noting that Howard was present for all the transactions, the district court explained that she coordinated the fourth transaction on her own and was the sole recipient of the proceeds from that transaction.  Given the record evidence about Howard's planning and role in the fourth transaction, we are not left with a definite and firm conviction that a mistake was made when the district court denied her request for a minor-role reduction.

Howard nonetheless argues that she was entitled to a minor-role reduction because her conduct was minor when compared to Evens's larger role.  It's true that Evens, not Howard, arranged the first three drug transactions and accepted the buyer's payments.  But the fact that Evens played a larger role than Howard does not mean that she played a minor role; we have recognized that for some schemes none of the participants will qualify as a minor or minimal participant.  *See Rodriguez de Varon*, 175 F.3d at 944.

10

**B.**    **The District Court Failed to Make Sufficient Factual Findings to Allow for Appellate Review of the Obstruction Enhancement.**

Howard also challenges the district court's application of a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  With respect to a sentencing enhancement for obstruction of justice, we review for clear error the district court's factual findings and *de novo* its application of the factual findings to the Sentencing Guidelines.  *United States v. Watts*, 896 F.3d 1245, 1254 (11th Cir. 2018).

> Section 3C1.1 states:
>
> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  Here, we must consider whether the district court erred in applying the enhancement on the basis that Howard made a materially false statement to a law enforcement officer that impeded her prosecution.  We accept that Howard's act of making a false statement to a law enforcement officer could justify application of the obstruction-of-justice enhancement.  But we must vacate and remand because the district court failed to make sufficient factual findings about why Howard's false statement was material and how her false statement, as opposed to the fact that she failed to self surrender, impeded her prosecution.

11

The commentary to § 3C1.1 tells us that that merely "avoiding or fleeing from arrest" generally does not qualify as obstruction of justice. U.S.S.G. § 3C1.1, cmt. n.5(D).[2] The district court nonetheless concluded that the obstruction enhancement was warranted because Howard made a false statement when she reported, on the first scheduled self-surrender date, that she was having car trouble. The commentary states that a defendant engages in obstruction of justice if she "provide[s] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." *Id.* § 3C1.1, cmt. n.4(G). A material statement is one that "if believed, would tend to influence or affect the issue under determination." *Id.* § 3C1.1, cmt. n.6. And to establish that the defendant's conduct obstructed or impeded the investigation or prosecution, the government must show that "it fruitlessly spent investigation or prosecution resources due to [the defendant's] untruthfulness." *United States v. Banks*, 347 F.3d 1266, 1270-71 (11th Cir. 2003).[3]

---

[2] The commentary also states that "willfully failing to appear, as ordered, for a judicial proceeding" constitutes obstruction. U.S.S.G. § 3C1.1, cmt. n.4(E). To the extent that the district court relied on this standard to apply the enhancement, we cannot say that it justifies applying the enhancement given that there is no indication that Howard was actually ordered to appear for either agreed-upon self-surrender date.

[3] In *Banks*, we announced this standard in the context of addressing whether an obstruction enhancement was warranted based upon a separate portion of the commentary to § 3C1.1, which provides that an obstruction enhancement is warranted if the defendant provided a false name or identification document at arrest so long as the defendant's conduct caused a "significant hindrance to the investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, cmt. n.5(a). But later in *Banks* we applied the same "significant hinderance" standard to determine whether the defendant's false statement to a law enforcement officer "significantly

At sentencing, the district court, adopting the probation officer's addendum to the PSI, found that Howard had made a false statement to a law enforcement officer when, on the first scheduled self-surrender date, she falsely stated that she was having car trouble but was on her way to court. But the district court provided no explanation as to how this false statement was material or impeded the investigation or prosecution. Given the district court's failure to include such findings, our en banc decision in *United States v. Alpert*, 28 F.3d 1104 (11th Cir. 1994) (en banc), dictates that we vacate and remand this case so that the district court can make the required factual findings about how Howard's false statement was material and how her particular false statement—as distinguished from the fact that she failed to surrender—impeded her prosecution.

In *Alpert*, we considered whether the district court erred in imposing an obstruction of justice enhancement when a couple fled prior to arrest. After the couple had been questioned by the government about potential credit card fraud, they entered into plea negotiations, which progressed to the point of discussing their potential sentences and the application of specific enhancements under the Guidelines. *Id.* at 1106. While the plea negotiations were ongoing, the government refrained from seeking an indictment. *Id.* Before the last scheduled

---

obstructed or impeded the official investigation or prosecution." *See Banks*, 347 F.3d at 1270 n.2.

13

negotiation session, the couple disappeared. *Id.* After the couple fled, the government presented the case to the grand jury and secured an indictment. *Id.* Several months after fleeing, the couple was found in California and arrested. *Id.* They ultimately pled guilty to the fraud charges. *Id.* At sentencing, the district court applied an enhancement for obstruction of justice, finding that the couple's "disappearance and subsequent activities slowed down the criminal process." *Id.*

On appeal, we vacated the sentences. We began by explaining that the couple's act of fleeing while they were engaged in plea negotiations did not constitute obstruction of justice. *Id.* at 1107. We stated that the enhancement "does not apply to persons engaged in criminal activity who learn of an investigation into that activity and simply disappear to avoid arrest, without more."[4] *Id.* We then considered whether the couple had engaged in additional conduct that would warrant application of the enhancement. *See id.* We observed that the obstruction enhancement would have been warranted if either defendant had made a materially false statement to a law enforcement officer that significantly obstructed or impeded the investigation or prosecution. *Id.* But we

---

[4] In *Alpert*, we characterized the couple's actions as "simply disappear[ing] to avoid arrest, without more," even though the couple disappeared during ongoing plea negotiations and the government, in reliance on those negotiations, had refrained from securing an indictment. *Id.* at 1106-07. Consistent with *Alpert*, we must treat Howard's act of fleeing after negotiating her self surrender as simply disappearing to avoid arrest, even though the government had delayed arresting her in reliance on her promise to self surrender.

concluded that we could not engage in "meaningful appellate review" of whether the enhancement was warranted on this basis because the district court made insufficient factual findings: the court failed to make findings that the defendants had made a false statement, the statement was material, and the statement significantly obstructed or impeded the investigation. *Id.* at 1107-08. We remanded the case so that the district court could make such factual findings, explaining that on remand the court "should note specifically what each defendant did, why that conduct warrants the enhancement, and, if applicable, how that conduct actually hindered the investigation or prosecution of the offense." *Id.*

Under *Alpert*, the district court's findings here were insufficient to allow us to engage in meaningful appellate review of the court's decision to apply the obstruction-of-justice enhancement. At sentencing, when the district court overruled Howard's objection, it adopted the reasoning in the probation officer's PSI addendum about why the enhancement applied. Although the addendum to the PSI indicated that Howard made a false statement on the date of the first scheduled self surrender when she reported having car trouble but being on her way to court, it included no explanation as to why Howard's false statement was material or how it impeded the investigation or prosecution. In the absence of clear factual findings from the district court about why the statement was material or how her conduct actually hindered the investigation or prosecution, we cannot assess whether the

15

enhancement was appropriately applied and therefore must vacate the sentence. *See Alpert*, 28 F.3d at 1108. If on remand, the district court decides to apply the enhancement, it must make particularized factual findings as to materiality and explain how the false statement hindered the prosecution.[5]

## III.  CONCLUSION

For the reasons set forth above, we vacate Howard's sentence and remand for resentencing consistent with this opinion.[6]

**VACATED AND REMANDED.**

---

[5] We note that Howard also could have obstructed justice if she "provid[ed] materially false information to a . . . magistrate judge." U.S.S.G. § 3C1.1, cmt. n.4(F). To the extent that the district court imposed the obstruction-of-justice enhancement on this ground, we vacate because we again conclude that the district court failed to provide sufficient factual findings to allow us to assess whether the enhancement was appropriately applied. If on remand the district court chooses to apply the obstruction enhancement on the basis that Howard made a false statement to a magistrate judge, the district court not only must identify the particular false statement that Howard made to the magistrate judge but also must explain why the statement was material. *See Alpert*, 28 F.3d at 1108.

[6] Howard also argues her sentence was substantively unreasonable because there was an unwarranted disparity between her 24-month sentence and Evens's 18-month sentence. Because we vacate and remand on the obstruction-of-justice enhancement, we do not reach the question of whether the sentence imposed was substantively reasonable.