[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10929

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

_versus_

ANTONIO JAMAR LASTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cr-00076-SDG-RGV-1

_____

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

After a jury convicted defendant Antonio Jamar Laster of one count of conspiring to possess with intent to distribute methamphetamine and one count of attempting to possess with intent to distribute methamphetamine, the district court sentenced him to 210 months' imprisonment. On appeal, Laster challenges the sufficiency of the evidence on both counts and the substantive reasonableness of his sentence. After careful consideration, we affirm.

## I.

A grand jury returned an indictment charging Laster with (1) conspiring to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine and (2) attempting to possess with intent to distribute at least 500 grams or more of a mixture or substance containing methamphetamine. Because Laster had previously been convicted of a "serious violent felony" and given the quantity of methamphetamine allegedly involved, Laster faced a mandatory minimum sentence of 15 years and a maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1). Laster pled not guilty to the charges.

## A.

At trial, the government introduced evidence showing the following. On October 9, 2020, law enforcement officers sur-

veilled a suspected drug stash house in Marietta, Georgia. In the afternoon, officers saw two men leave the house and drive away in a car. Officers followed the car to a nearby supermarket parking lot, where they watched it park next to a car occupied by two women. The officers saw one of the men pass a black plastic grocery bag to one of the women. One group of officers followed the men and saw that they drove back to the stash house. Another group of officers followed the women. They pulled the women's car over. When the officers searched the car, they found one kilogram of methamphetamine inside a black plastic grocery bag, the same one the officers saw the men pass to the women.

For the remainder of the day, officers continued to surveil the stash house. A few hours later, they saw a Toyota Camry leave the stash house. The officers followed the Camry to a parking lot in Woodstock, Georgia, approximately two miles from the stash house. In the parking lot, the officers saw the Camry park adjacent to a blue Nissan Sentra. The vehicles were positioned so that the driver's door of the Camry was next to the driver's door of the Sentra.

One officer approached the Camry, which was occupied by a driver and a passenger. When the officer looked in the vehicle, he saw a plastic bag resting on the passenger's lap, and inside the bag was a substance that appeared to be methamphetamine. Officers searched the Camry and found three kilograms of methamphetamine.

Officers also approached the Sentra. An officer asked the driver, who turned out to Laster, for identification. Laster provided his driver's license. He told the officer that he had traveled from Tennessee to see family. He claimed that he had gotten lost and stopped in the parking lot for directions. He said that he met the car's passenger, Bryan Hernandez, in the parking lot and that Hernandez was helping him with directions.

Officers obtained a warrant to search the Sentra. The officers found no drugs in the car. But they found $23,100 in cash in the vehicle.

Officers also obtain a warrant to search Laster's phones. On one of his phones, they discovered messages between Laster and a contact saved under the name "Fatboy." On October 8—the day before the two cars met in the parking lot—Laster and Fatboy exchanged messages discussing that Laster was planning to travel from Tennessee to Atlanta the next day to purchase three kilograms of drugs for $23,100. On October 9, Laster messaged Fatboy to let him know when he began the drive.

Officers also uncovered messages that Laster had exchanged with an unsaved contact. On October 9, this contact messaged Laster with the address of the parking lot in Woodstock. Laster messaged the contact when he arrived at the parking lot. The contact then instructed Laster how to divvy up the $23,100 that was to be paid for the drugs and told Laster to give the money to an individual driving a "Brown Blazer." Doc. 137 at

80.[1] Hernandez had driven a brown Chevrolet Trailblazer to the parking lot.

At trial, Hernandez testified for the government. He explained that on October 9 a member of a Mexican drug cartel had messaged him to go to the parking lot in Woodstock and pick up money from a man in a blue Nissan Sentra. When Hernandez arrived at the parking lot, he got in Laster's blue Sentra, counted money from Laster, and waited for the drugs to be delivered.

The jury found Laster guilty of conspiring to possess with intent to distribute methamphetamine and attempting to possess with intent to distribute methamphetamine. The jury found that each offense involved 500 grams or more of a mixture or substance containing methamphetamine.

**B.**

At the sentencing hearing, the district court calculated Laster's Sentencing Guidelines range as 235 to 292 months. Laster asked the court to impose a 180-month sentence, which was the statutory mandatory minimum for the offense.[2] *See* 21 U.S.C.

---

[1] "Doc." numbers refer to the district court's docket entries.

[2] Because each offense involved "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine" and Laster had a prior conviction "for a serious drug felony or serious violent felony," he faced a mandatory minimum sentence of 15 years. 21 U.S.C. § 841(b).

§ 841(b)(1). The government urged the court to impose a sentence of 210 months, which was below the guidelines range.

Ultimately, the district court imposed a 210-month sentence. The court explained that it had considered the sentencing factors set forth at 18 U.S.C. § 3553(a).[3] It stated that it had considered the "seriousness of the offenses" for which Laster had been convicted. Doc. 139 at 24. The court also discussed Laster's criminal history, noting that he had previously been convicted of aggravated robbery, which the court characterized as a "very serious violent offense." *Id.* The court also noted the need "to specifically deter [Laster] from future violations of law." *Id.*

This is Laster's appeal.

---

[3] Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

## II.

We review *de novo* a defendant's challenge to the sufficiency of the evidence, viewing "all evidence in the light most favorable to the government" and "resolving any conflicts in favor of the government's case." *United States v. Watts*, 896 F.3d 1245, 1250–51 (11th Cir. 2018). We cannot overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). "The party challenging the sentence bears the burden to show that [the sentence imposed] is unreasonable in light of the record and the § 3553(a) factors." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

## III.

On appeal, Laster challenges his convictions on the basis that there was insufficient evidence to convict him. He also argues that the 210-month sentence imposed was substantively unreasonable.

## A.

Laster argues that there was insufficient evidence for the jury to convict him of conspiring to possess with intent to distribute methamphetamine or attempting to possess with intent to distribute methamphetamine. We address each argument in turn.

To support Laster's conviction for conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, the government had to prove beyond a reasonable doubt that: (1) a conspiracy to possess methamphetamine with intent to distribute existed between two or more persons, (2) Laster knew of the conspiracy, and (3) Laster knowingly and voluntarily became a part of the conspiracy. *See United States v. Andrews*, 953 F.2d 1312, 1318 (11th Cir. 1992). To prove Laster's knowing and voluntary participation, the government had to prove that Laster "had a deliberate, knowing, and specific intent to join the conspiracy." *United States v. Jenkins*, 779 F.2d 606, 609 (11th Cir. 1986) (internal quotation marks omitted). "[T]he defendant's knowledge of and membership in the conspiracy may be proven by acts on his part which furthered the goal of the conspiracy." *United States v. Cross*, 928 F.2d 1030, 1042 (11th Cir. 1991).

Laster does not contest that the government proved that there was a conspiracy to possess methamphetamine with intent to distribute. But he argues that the government failed to prove that he knew of the conspiracy or knowingly and voluntarily participated in it. He claims that the government's evidence was insufficient because no drugs were found on Laster's person or in his vehicle. But we have recognized that "[o]nce the existence of a conspiracy is established, only slight evidence is necessary to connect a particular defendant to the conspiracy." *United States v. Gates*, 967 F.2d 497, 499 (11th Cir. 1992).

Here, the government introduced sufficient evidence to connect Laster to the conspiracy. The jury heard that Laster drove his Nissan Sentra to the parking lot where he met up with two men in the Camry. The jury also heard that at the meeting the two men in the Camry had three kilograms of methamphetamine and Laster had $23,100 in cash. And messages from Laster's phone were introduced to show that he coordinated with "Fatboy" and another contact about his plan to travel from Tennessee to the Atlanta area to purchase three kilograms of methamphetamine for $23,100. Furthermore, Hernandez testified to the jury that he went to the parking lot to make sure that Laster brought sufficient money before the drugs were delivered. From this evidence, a jury could conclude that Laster knew of and voluntarily joined the conspiracy.

Regarding the crime of attempting to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), the government had to prove that Laster "possessed the mens rea required for the underlying crime and took a substantial step toward the commission of that crime." *United States v. Amede*, 977 F.3d 1086, 1099 (11th Cir. 2020) (internal quotation marks omitted). We have explained that "[m]ere planning or preparation to engage in a crime is not enough to constitute a substantial step." *United States v. Singer*, 963 F.3d 1144, 1160 (11th Cir. 2020) (internal quotation marks omitted). To take a substantial step, "the defendant must engage in objectively culpable and unequiv-

ocal acts toward accomplishing the crime." *Id.* (internal quotation marks omitted).

Laster argues that the government's evidence was insufficient because there was no evidence that he ever paid anyone for drugs or that any drug transaction ever took place. Even so, government's evidence was sufficient to show that Laster took a substantial step towards completing the crime. The messages on Laster's phone showed that he planned to drive from Tennessee to the Atlanta area to purchase three kilograms of drugs for $23,100. The evidence further showed that Laster then actually traveled with $23,100. Upon arriving at the parking lot in Woodstock, Laster messaged with a contact to complete the transaction. When Hernandez arrived at the parking lot, Laster gave him the cash for the purchase, which Hernandez counted, and then waited for the drugs to be delivered. Viewing the evidence in the light most favorable to the government, we conclude that this evidence was sufficient to prove that Laster took a substantial step towards possessing with the intent to distribute methamphetamine.

B.

Turning to the sentencing issue, Laster argues that his 210-month sentence was substantively unreasonable. But we cannot say that the district court abused its discretion.

When reviewing for substantive reasonableness, we ordinarily will vacate a sentence "only if⸏ we are left with the definite

and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted). "The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016). A district court "has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of the variance." *Id.* Although we do not presume that a sentence falling within the guideline range is reasonable, we ordinarily expect such a sentence to be reasonable. *Id.* at 1309–10. In addition, "[a] sentence imposed well below the statutory maximum penalty is another indicator of reasonableness." *Id.* at 1310.

Laster argues that the 210-month sentence that the district court imposed was "unduly harsh" and not supported by the § 3553(a) factors. Appellant's Br. at 8. We disagree. The district court varied downward from the guidelines range when it imposed the 210-month sentence. Although Laster argues that the district court should have granted a more substantial downward variance, the district court had "considerable discretion" in determining the extent of the variance. *Croteau*, 819 F.3d at 1309. We cannot say that the district court abused its discretion when it gave weight to certain § 3553(a) factors, including the nature and circumstances of the offense, Laster's history and characteristics,

and the need for deterrence. In addition, Laster's sentence was below the guidelines range and well below the statutory maximum of life imprisonment, two factors that further indicate the sentence was reasonable. *See id.* at 1309–10.

## IV.

For the reasons set forth above, we affirm the judgment and sentence of the district court.

**AFFIRMED.**