[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 23-11306

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SEAN S. SCOTT,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:22-cr-00021-MW-MAF-1

————————————

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Sean Scott appeals his conviction for possession of a firearm in relation to or in furtherance of a drug trafficking crime. On appeal, he argues that there was insufficient evidence to establish the requisite connection or nexus between his possession of a firearm and his drug offense, because he legally owned the firearm for self-protection and there was no evidence to suggest that he believed that he needed a gun during the drug deal. He also argues on appeal that the government engaged in prosecutorial misconduct by misstating the law during closing arguments and erroneously opening the door for the jury to misinterpret the legal standard.

## I.

Where a defendant does not move the district court for a judgment of acquittal at the close of all evidence, we will reverse his conviction only "to prevent a manifest miscarriage of justice." *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006). "This standard requires a finding that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* (quotation marks omitted). In determining whether this standard is met, we "must view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility determinations that support the jury's verdict. *Id.*

The evidence will be sufficient to support a conviction if a reasonable trier of fact could find that the evidence established the defendant's guilt beyond a reasonable doubt. *United States v. Jiminez*, 564 F.3d 1280, 1284-85 (11th Cir. 2009). It is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether the jury reasonably could have acquitted, but whether it reasonably could have found the defendant guilty. *Id.* at 1285. Although the evidence need not exclude every reasonable hypothesis of innocence, we will not affirm a conviction predicated on "conjecture." *United States v. Toler*, 144 F.3d 1423, 1433 (11th Cir. 1998). This test for sufficiency is the same, regardless of whether the evidence is direct or circumstantial, but where the government relied on circumstantial evidence, reasonable inferences must support the conviction. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Watts*, 896 F.3d 1245, 1251 (11th Cir. 2018) (quotation marks omitted).

"[A] statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (emphasis in original). In this context, "substantive evidence" means evidence "adduced for the purpose of proving a fact in issue, as opposed to evidence given for the purpose of discrediting a witness . . . or of corroborating his testimony." *Id.* (quotation marks omitted). In other words, we have stated that, "when a defendant

chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *Id.* (quotation marks omitted). However, a jury's disbelief of a testifying defendant cannot be used as the sole basis to support a conviction, in the absence of other probative evidence in support thereof. *United States v. McCarrick*, 294 F.3d 1286, 1293 (11th Cir. 2002). We are "bound to follow a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this Court sitting *en banc*." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).

Section 924(c)(1)(A) of Title 18 of the U.S. Code provides for enhanced criminal penalties for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A); *United States v. Haile*, 685 F.3d 1211, 1217 (11th Cir. 2012). To support a conviction under § 924(c)(1)(A), the government must prove either of two prongs: the "during and in relation to . . . uses or carries" prong or the "in furtherance of . . . possesses" prong. *Haile*, 685 F.3d at 1217 (quotation marks omitted, alterations in original).

To sustain a conviction under the "carries" branch of the first prong, "the government must show actual transporting of the firearm during and in relation to the drug trafficking offense—i.e., that the defendant carried the firearm on his person or carried the firearm in a vehicle used for drug distribution during and in relation to the drug trafficking offense." *United States v. Chirinos*, 112 F.3d

1089, 1095 (11th Cir. 1997). The "in relation to" element of this prong is expansive, and "at a minimum, [it] clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 237-38 (1993). The "in relation to" element "allay[s] explicitly the concern that a person could be punished under § 924(c)(1) for committing a drug trafficking offense while in possession of a firearm even though the firearm's presence is coincidental or entirely unrelated to the crime." *Id.* at 238 (quotation marks omitted, alteration in original). To be "in relation to" a drug trafficking offense, the firearm "at least must facilitat[e], or ha[ve] the potential of facilitating," the offense. *Id.* (quotation marks omitted, alteration in original). Additionally, the Supreme Court has stated that a firearm "merely facilitates" a drug trafficking offense when it provides "a means of protection or intimidation." *Id.*

To support a conviction under the "in furtherance of" prong, the government must establish that a defendant's possession of a firearm "helped, furthered, promoted, or advanced" the drug trafficking crime. *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). "[T]he presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction." *Id.* at 1253. Rather, the government must show "some nexus between the firearm and the drug selling operation." *Id.* (quotation marks omitted). We have articulated factors that are used to determine the presence of a sufficient nexus between a firearm and drug trafficking:

the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* at 1253 (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)).

We have recognized that "[t]here is a frequent and overpowering connection between the use of firearms and narcotics traffic." *United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986); *see also United States v. Hromada*, 49 F.3d 685, 689 (11th Cir. 1995) ("Guns . . . go hand-in-hand with illegal drug operations."); *United States v. Lopez*, 649 F.3d 1222, 1242 (11th Cir. 2011) ("[A]s Forrest Gump might say, drugs and guns go together like peas and carrots."); *United States v. Martin*, 794 F.2d 1531, 1533 (11th Cir. 1986) (describing firearms as "tools of the trade" in drug trafficking).

Here, Scott failed to renew his motion for a judgment of acquittal at the close of all evidence, so his conviction may only be reversed where necessary "to prevent a manifest miscarriage of justice." *Milkintas*, 470 F.3d at 1343. Scott has failed to show that the affirmance of his conviction under Count Two would result in a miscarriage of justice. When reviewing all evidence in the light most favorable to the government and drawing all reasonable inferences and credibility determinations in support of the verdict,

the evidence presented at trial is sufficient to support a finding by a reasonable jury that Scott possessed the firearm "in relation to" or "in furtherance of" the drug crime. *Milkintas*, 470 F.3d at 1343; Watts, 896 F.3d at 1251. Scott correctly notes that § 924(c)(1)(A) does not allow for one to be convicted when his possession of a firearm is coincidental and entirely unrelated to the simultaneous drug trafficking crime. *Smith*, 508 U.S. at 238. However, a defendant's possession of a firearm goes beyond coincidence when it provides "a means of protection or intimidation" during the perpetration of a drug crime. *Id.*

In Scott's case, the evidence presented at trial, when all inferences are drawn in favor of the verdict, supports a reasonable finding that his possession of the firearm facilitated the drug deal by providing him protection for himself, the marijuana, and the cash that he expected to receive from Cauley. He knowingly carried the firearm with him during his four-hour drive from Orlando to Tallahassee to meet a man he had never met before, and he expressed concerns over his safety in text messages to Cauley.

While Scott testified that he owned the firearm for general self-protection and always kept it in his vehicle when he travelled, the jury could reasonably have found this testimony incredible and found instead that he possessed the gun for the purpose of protecting himself during the drug deal. *Brown*, 53 F.3d at 314. While the purported disbelief of Scott's testimony could not support his conviction on its own, the government also put forth evidence that drug dealers are at a high risk for robbery, and evidence that Scott

re-assembled and loaded the firearm between the first and second traffic stops. *McCarrick*, 294 F.3d at 1293. Additionally, to the degree that Scott argues that *Brown* is inapplicable to his case because it stands for a misstatement of law, this Court is bound by the prior panel precedent rule. *Gillis*, 938 F.3d at 1198. Moreover, Scott's argument that *Brown* relieves the government of its burden of proof is unfounded, because this Court has clearly stated that *Brown* does not allow for a conviction based solely on the defendant's testimony absent additional probative and relevant corroborative evidence. *McCarrick*, 294 F.3d at 1293. And there is ample corroborative evidence in this case that Scott's gun was there "in furtherance of" the drug crime—e.g. that Scott reassembled and loaded the weapon when (or before) he picked up the marijuana so as to provide protection for the enhanced risk posed by the presence of $25,000 of marijuana in the car, and evidence that Scott was concerned about his safety during the drug transaction.

As for the "in furtherance of" prong of § 924(c)(1)(A), the government also put forth sufficient evidence to support Scott's conviction under the miscarriage of justice standard. Scott correctly states that the mere presence of a firearm is insufficient to support a conviction § 924(c)(1)(A), and he argues that some of the *Timmons* factors cut against a finding of a nexus between his firearm possession and his drug crime. *Timmons*, 283 F.3d at 1253. However, other factors support a reasonable finding to the contrary. Scott's firearm was easily accessible in the center console of his vehicle while he conducted a long-distance attempt to sell 20 pounds of marijuana for $25,000. *Id.* The government also presented

evidence that the firearm was loaded when it was found during the second traffic stop, along with evidence that Scott was meeting a man whom he had never met before and had expressed some concern over his safety. *Timmons*, 283 F.3d at 1253. Additionally, this Court has regularly articulated an understanding of an inherent connection between illegal drugs and firearms. *Cruz*, 805 F.2d at 1474; *also see Hromada*, 49 F.3d at 689; *Lopez*, 649 F.3d at 1242; *Martin*, 794 F.2d at 1533. In light of the *Timmons* factors and precedent of this Court, the government's evidence was sufficient to support a reasonable finding of a nexus between Scott's possession of the firearm and his drug trafficking offense. *Timmons*, 283 F.3d at 1253.

As for either prong of § 924(c)(1)(A), the government's evidence was not so lacking as to require "a finding that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Milkintas*, 470 F.3d at 1343 (quotation marks omitted). Thus, there was sufficient evidence to support Scott's conviction under the "manifest miscarriage of justice standard." Accordingly, we affirm as to this issue.

## II.

Where a defendant raises a prosecutorial misconduct claim for the first time on appeal, we review only for plain error. *United States v. Frank*, 599 F.3d 1221, 1238 (11th Cir. 2010). "Under plain-error review, the defendant has the burden to show that there is (1) error (2) that is plain and (3) that affect[s] substantial rights." *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted, alteration in original). If all three requirements

are met, we may reverse only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted, alteration in original).  An error "affect[s] a substantial right of a party if [it] ha[s] a substantial influence on the outcome of a case or leave[s] grave doubt as to whether [it] affected the outcome of a case." *United States v. Cruickshank*, 837 F.3d 1182, 1191 (11th Cir. 2016) (quotation marks omitted). "[W]here the effect of an error on the result in the district court is uncertain or indeterminate, the defendant has not met his burden of demonstrating prejudice for purposes of plain error review. *Id.* (quotation marks omitted).

"It is the law of this [Court] that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Curtin*, 78 F.4th 1299, 1310 (11th Cir. 2023) (quotation marks omitted).  "[A] close call is not enough for [an appellant] to prevail on plain error review." *United States v. Kushmaul*, 984 F.3d 1359, 1367 (11th Cir. 2021).

"To find prosecutorial misconduct, a two-element test must be met: (1) the questions or comments must be improper, and (2) the questions or comments must prejudicially affect the substantial rights of the defendant." *United States v. Schmitz*, 634 F.3d 1247, 1267 (11th Cir. 2011).  However, an error stemming from prosecutorial misconduct is harmless "[w]hen the record contains sufficient independent evidence of guilt." *United States v. Eckhardt*,

466 F.3d 938, 947 (11th Cir. 2006). "[A] slight misstatement of the law by a prosecutor can be rendered harmless by the court's proper instructions to the jury." *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983), *on reh'g,* 736 F.2d 1480 (11th Cir. 1984). To prejudicially affect a defendant's substantial rights, a prosecutor's improper conduct must be "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *United States v. Cooper*, 926 F.3d 718, 739 (11th Cir. 2019) (quotation marks omitted, alteration in original). To assess the prejudicial effect of improper statements, we review them "in context." *United States v. Stefan*, 784 F.2d 1093, 1100 (11th Cir. 1986).

Here, Scott has failed to prove a successful prosecutorial misconduct claim under the plain error standard of review. The primary statement challenged by Scott included the government's contention that it had presented sufficient evidence to prove that (1) Scott possessed the firearm intentionally, and (2) the firearm had the potential to facilitate the drug crime by providing Scott a means of protection during his perpetration of the crime. These statements, when viewed in proper context, are not a misstatement of the law, but rather an accurate description of the proper legal test for determining whether one's possession of a firearm was "in relation to" a drug trafficking offense. Moreover, to the degree the government's statements contained any minor misstatement of the law, the court rectified them by providing jury instructions with a correct statement of the law. *Granville*, 716 F.2d at 822. Additionally, even if the government's statements were an unrectified legal error, any such error was harmless in light of the independent

evidence establishing Scott's guilt, as discussed previously. Scott's challenge to the government's conduct concerns primarily one statement during closing arguments, and he essentially makes no argument that the government's allegedly improper conduct was "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *Cooper*, 926 F.3d at 739 (quotation marks omitted, alteration in original). Accordingly, we affirm as to this issue.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**